## Commonwealth *v.* Glover, Appellant.

494

Argued November 10, 1971. Before JONES, EAGEN, O'BRIEN, ROBERTS, and BARBIERI, JJ.

*James J. Binns,* for appellant.

Romer Holleran, Assistant District Attorney, with him *Milton M. Stein,* Assistant District Attorney, *James D. Crawford,* Deputy District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE EAGEN, January 20, 1972:

The appellant, James Glover, was convicted by a jury of murder in the first degree and punishment was fixed at life imprisonment. Following the denial of post trial motions and imposition of sentence as the jury directed, this appeal was filed.

We have studied the record and are satisfied the evidence was adequate to sustain a finding of murder in the first degree. It was sufficient to establish that Glover, wielding a knife, broke into the second floor apartment of his estranged girl friend, Brenda McKinnon, while Andrew Robinson, Edward Milner and Wil-

liam Burton were present; that as the three guests attempted to flee the danger, Glover ran after them, caught Robinson near a window in the kitchen of the residence, stabbed him, and pushed him out of the window causing injury which resulted in Robinson's death. Glover attempted to excuse the stabbing by pleading self-defense at trial, but this defense failed as a matter of law, and undoubtedly failed to impress the jury, when Glover admitted during cross-examination that he stabbed Robinson as the latter was attempting to flee from him. Cf. *Commonwealth v. Johnston*, 438 Pa. 485, 263 A. 2d 376 (1970).

Appellant first complains he was denied a fair trial because of an outburst of laughter by spectator-police officers during the opening address to the jury by defense counsel. The record indicates that the incident complained of was not of serious proportion, and no prejudice resulted. Hence, the trial court did not abuse its discretion in refusing to award a new trial because of this uncalled-for conduct. See *Commonwealth v. Garrison*, 443 Pa. 220, 279 A. 2d 750 (1971). Moreover, no motion for a mistrial was entered. Nonetheless, we wish to emphasize that it is the duty of the court to see that trial proceedings are conducted in an orderly manner and any disturbance or outbursts should be checked immediately by the court *on its own motion*. Misconduct on the part of a trial audience should never be tolerated and should immediately be suppressed in a manner as to impress upon the jury the impropriety and injustice of such conduct.

The next assignment of error challenges the admission of testimony at trial by Miss McKinnon as to an incident which occurred two or three weeks prior to the stabbing of Robinson. As to this, Miss McKinnon stated that Glover phoned her and asked that she meet him at the residence of a friend to discuss their child.

Such a meeting was held, after which Glover followed the witness back to her apartment, against her wishes, and forced his way inside. An altercation developed between Glover and Edward Milner, who was present in the apartment at the time and came to the assistance of Miss McKinnon. Glover punched Milner in the mouth and threatened to secure a weapon "to kill this M. F." before being taken into custody by the police. This evidence was properly admitted to demonstrate the existence of ill feeling and motive on the part of Glover directed against Miss McKinnon and her friends. It is well settled that "[e]vidence to prove motive, or intent, or plan, or design, or ill will or malice is always admissible." *Commonwealth v. Kravitz,* 400 Pa. 198, 216 161 A. 2d 861, 870 (1960), cert. denied, 365 U.S. 846, 81 S. Ct. 807 (1961). "Further, evidence of prior occurrences (e.g., previous threats) and prior offenses, if they are related to the offense for which the defendant is on trial, may be admitted to show malice, motive or intent." *Commonwealth v. Faison,* 437 Pa. 432, 446, 264 A. 2d 394, 401 (1970).

An incident occurring about two or three weeks before the stabbing involved is clearly not too distant in time to be competent evidence of Glover's state of mind at the time of the killing. "The state of mind that will permit the admission of an unrelated crime is the state of mind at the time of the commission of the offense as shown by the acts or words of the defendant so close in time to the alleged offense as to have bearing upon his state of mind at that time." *Commonwealth v. Boulden,* 179 Pa. Superior Ct. 328, 341, 116 A. 2d 867, 873 (1955).

While proof of ill will and prior acts of hostility in the context of a homicide usually demonstrate the state of mind of a defendant to the victim himself, under the circumstances of this case, the evidence of bad

feeling towards Miss McKinnon and Milner was relevant to the Robinson homicide.

The trial testimony demonstrates that Glover knew Milner was one of the guests present in the McKinnon apartment at the time he broke in with knife in hand and eventually stabbed Robinson. Milner succeeded in escaping during the melee, but it is a reasonable inference that he was a prime target of Glover's attack and that Glover vented his venom on the first available body. The challenged evidence substantiated the Commonwealth's position that Glover entered the apartment as an armed aggressor.

The instant situation is not unlike that dealt with in *Commonwealth v. Minoff,* 363 Pa. 287, 69 A. 2d 145 (1949), which involved a bitter quarrel between two disputing factions of a church congregation. The hostile acts and threats of violence of the defendant in that case against one member of the opposing faction was held admissible as evidence at his trial for the homicide of two other members of the same division. "Here, the evidence of the prior threat was admissible to show the quo animo of the defendant under like mental stimulus toward certain persons with respect to a particular subject". Id. at 295, 69 A. 2d at 149. In the case at bar, threats to Miss McKinnon and her male friends were most relevant to demonstrate Glover's quo animo to other male friends of his former paramour, particularly since Milner was present to act as the "mental stimulus" that precipitated the rage.

The next claim of error involves the testimony of Detective Lawrence, the officer assigned to visit Miss McKinnon's apartment to investigate the stabbing. Detective Lawrence related the contents of a telephone conversation between Glover and Miss McKinnon which he overheard by listening on an extension phone in the latter's apartment.

Miss McKinnon had already divulged the substance and surrounding circumstances of such conversation to the jury. She testified that at about 8:00 or 9:00 p.m., on the evening of the stabbing (the offense having been committed at about 1:30 p.m. that afternoon), she received a phone call from the appellant (a voice with which she was obviously familiar), to wit: "Well, he admitted to me that he had come there with the intention of trying to kill me and my present boy friend at the time. And that was the most of it. I got him to admit that".

Detective Lawrence's account merely coroborated such testimony. He stated that, "I heard them talking back and forth while I was listening and he stated he meant to get her. . . ." The officer's stated purpose for listening was to attempt to get some clue as to where appellant was calling from in the hope of apprehending him. He did this with the consent and knowledge of Miss McKinnon.

Assuming arguendo, that Lawrence's listening in to the conversation involved constituted a violation of the Act of July 16, 1957, P. L. 956, §1, 18 P.S. 3742,[1] and it was error to admit his testimony as to what he heard, the error was harmless under the circumstances.

Miss McKinnon's disclosure of the contents of the telephone conversation did not violate Glover's right to an expectation of privacy, as articulated in *Katz v. United States*, 389 U.S. 347, 88 S. Ct. 507 (1967). As relevantly stated in *United States v. White*, 401 U.S. 745, 749, 91 S. Ct. 1122, 1124-25 (1971), "Katz involved no revelation to the Government by a party to conversations with the defendant nor did the Court indicate in any way that a defendant has a justifiable and constitutionally protected expectation that a person with

---

[1] See *Commonwealth v. Murray*, 423 Pa. 37, 223 A. 2d 102 (1966).

whom he is conversing will not *then* or later reveal the conversation to the police". (Emphasis added.)

Objection to the introduction of this evidence on grounds of hearsay is clearly unmeritorious. Firstly, the words of Glover constitute an admission and therefore a well established exception to the exclusionary rule. See *Commonwealth v. Frazier,* 411 Pa. 195, 191 A. 2d 369 (1963). Secondly, the words were introduced into evidence not for the truth of the matter contained therein but rather to corroborate the fact that they were in fact said. Even though the detective himself was not able to identify the voice, Miss McKinnon's testimony could be used to overcome this problem. Such is the rule recently reaffirmed in *Commonwealth v. De Rohn,* 444 Pa. 334, 338, 282 A. 2d 256 (1971), where this Court held that " '[t]he fact that [appellant] was the person who telephoned . . . is not to be distinguished from any other fact, and may be proved by competent direct or circumstantial evidence'."

The next point of error arises from the action of the assistant district attorney in displaying a knife, not in evidence, to the jury during his closing argument. Although the Commonwealth's case in chief clearly demonstrated that the knife employed in the stabbing of Robinson was never found, the district attorney nevertheless pulled a knife from his pocket and proceeded to illustrate for the jury his theory of the attack.

The trial notes reveal the following:

"Mr. Brereton: [A]nd I submit to you that there is a very strong possibility as to why Mr. Burton thought this was a hooked knife, with the several stabbings by the defendant Glover against the trunk and abdomen of the decedent, that the knife might have closed in this fashion (indicating pocketknife), or perhaps as so, in this fashion (indicating) or about to

close. This gave the appearance that the knife might have been of a hooked nature. But, prior to this, the knife was open—this isn't the knife, I borrowed this for the purpose of this case—prior to that the knife was open, and the stabbing and jabbing were made as described and testified to by Miss McKinnon, Mr. Burton—

"Mr. Binns: If the court please, I move for the withdrawal of a juror.

"Mr. Brereton: On what ground?

"Mr. Binns: On the ground that Mr. Brereton has displayed a penknife to the jury, which has no significance.

"The Court: Did you hear what he said, this knife has no relevance to the alleged crime?

"Mr. Binns: Absolutely.

"The Court: I always say to the jury, again, this is not evidence, this is simply a summation of the Commonwealth, what they feel they have proven and what the facts are. The jury is the fact-finding body. All right.

"Disregard this penknife as having anything whatsoever to do with this case.

"Mr. Brereton: It was just for demonstrative purposes, that's all I was using it for."

The judge added the following instructions on this incident in his charge to the jury: "Then we had Detective Zucker testify that . . . no knife was ever recovered from this incident. . . . Also, while I'm on the subject of knives, I just want to tell you, when the District Attorney addressed you yesterday and, unbeknownst to me, brought out a pocketknife, I don't want you to think for one minute that the Commonwealth has presented the knife that was involved in this case, because the police officer testified that no knife was ever recovered, and I want you to disregard that particular

incident on what the District Attorney did during his address to you. It was only for demonstrative purposes, and that only. Forget about that incident."

The assistant district attorney was clearly in error in displaying a knife to the jury that had no relevance. The fact, however, that the jury was definitely aware that no knife had been recovered in the case, coupled with the trial judge's firm instructions to the jurors to disregard the exhibition, reduces the district attorney's impropriety to mere harmless error.

The recent case of *Commonwealth v. Fennell*, 444 Pa. 1, 278 A. 2d 884 (1971), is markedly similar to the instant case. There the district attorney displayed a bottle to the jury to prove that a bottle of a *similar* nature was used to strike the deceased. Concerning this action, we said: "Appellant next contends that the trial Court improperly refused to withdraw a juror after the assistant district attorney had exhibited a 16-ounce Pepsi-Cola bottle to the jury. . . . The trial Judge carefully instructed the jury to disregard the Pepsi-Cola bottle because it had no bearing on the case. The withdrawal of a juror is within the sound discretion of the trial Judge, and we will not reverse absent a flagrant abuse of discretion. Our review of the record, including the instructions by the trial judge to the jury, clearly establishes that the denial of the motion to withdraw a juror was not an abuse of discretion." 444 Pa. at 3, 4.

Although we do not find the acts of the district attorney, in the context of this case, to warrant a reversal of the conviction, we do remind the state's attorneys of the admonition laid down in *Commonwealth v. Dickerson*, 406 Pa. 102, 176 A. 2d 421 (1962). There we held that "[t]he district attorney should always bear in mind his proper role in a trial of such great import [i.e., murder trial] and religiously refrain from

conduct unbecoming such a responsible trust. A cause, above everything, should be fairly tried and incorrect statements or unfair, intemperate and prejudicial arguments should always be avoided. We cannot urge upon district attorneys too strongly the need for refraining from such conduct." 406 Pa. at 109, 110.

The next claim of error involves the charge of the judge on the issue of credibility. While the charge dealt generally with the problem of resolving the believability of witnesses, only as to appellant did the trial court invoke the maxim "falsus in uno, falsus in omnibus".

Such indeed was error since the maxim should have been said to be equally applicable to all witnesses. Appellant is foreclosed, however, from raising this allegation of error since defense counsel failed to take specific objection to this inadequacy in the charge. This is the clear mandate of Pennsylvania Rule of Criminal Procedure 1119(b). *Commonwealth v. Jennings,* 442 Pa. 18, 24, 274 A. 2d 767 (1971), instructs us that "Pa. R. Crim. P. 1119(b) provides: '(b) No portions of the charge nor omissions therefrom may be assigned as error, unless specific objections are made thereto before the jury retires to deliberate. All such objections shall be made beyond the hearing of the jury'."

The only exception to the rule permitting assignment of error despite lack of objection is in the event that "there is basic and fundamental error which affects the merits or justice of the case, or . . . offends against the fundamentals of a fair and impartial trial." *Commonwealth v. Butler,* 442 Pa. 30, 33, 272 A. 2d 916 (1971).

Since the jury herein was instructed to carefully weigh and assess the credibility of all the witnesses, no error, fundamental in dimension can be said to have been wrought. The failure to apply the maxim to all

the witnesses could have easily been remedied by a timely amendment to the charge. We will not allow defense counsel to sit quietly by and thereafter on appeal take advantage of what was a correctable trial omission.

We have considered all asserted assignments of error in connection with the record and are convinced the judgment should not be disturbed. It is therefore affirmed.

Mr. Chief Justice JONES and Mr. Justice ROBERTS concur in the result.

Former Mr. Chief Justice BELL and Mr. Justice POMEROY took no part in the consideration or decision of this case.

Former Mr. Justice BARBIERI took no part in the decision of this case.