Commonwealth *v.* Wright, Appellant.

Argued June 13, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAËTH, JJ.

Louis M. Natali, Jr., with him *Segal, Appel and Natali,* for appellant.

*Bonnie Brigance Leadbetter,* Assistant District Attorney, with her *David Richman, Mark Sendrow,* and *Steven H. Goldblatt,* Assistant District Attorneys, *Abraham J. Gafni,* Deputy District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *F. Emmett Fitzpatrick,* District Attorney, for Commonwealth, appellee.

OPINION BY WATKINS, P. J., April 22, 1975:

This is an appeal from the judgment of sentence of the Court of Common Pleas, Trial Division, Criminal Section, of Philadelphia County, after conviction in a non-jury trial of the charge of possession of a controlled substance with intent to deliver; and from the denial of post-trial motions.

On a Sunday, September 3, 1972, at about 7:59 A.M., a police officer observed an automobile being driven so slowly, at an estimated speed of five miles per hour, that the officer suspected that the operator was intoxicated. He had observed the car for several blocks and it was interfering with the flow of traffic. He stopped the automobile and the operator could not produce an owner's card. He was not intoxicated. The officer asked him to step out of the car so that he could check the serial numbers of the car on the inside of the car door so that they could be checked with the stolen car list.

As he was copying the number, he observed, in plain view, on the floor on the driver's side of the car a blue paper bag. On top of the bag, which was open at the top, was a bundle of glassine packets (25) containing a white powder. The officer emptied the blue bag and found it contained 9 bundles (225 packets) identical to the first bag found on top. He then placed the first bag in the blue bag with the rest of the packets, placed the appellant under arrest and issued a citation for traffic violation. The bag containing the 10 bundles was submitted to the police laboratory for chemical analysis. The chemist found that all packets contained heroin.

A motion to suppress this evidence was held before Judge Vito Canuso, who suppressed the nine bundles found inside the blue bag, but denied suppression of the bag found in clear view of the officer. He also found that the car stop and registration check were proper and that the initial bundle was seized pursuant to the plain view doctrine. This ruling is not contested by the appellant. The Commonwealth had no need to appeal the suppression ruling concerning the nine bags as it had the evidence of the tenth bag, although contending the ruling to be clear error. *Commonwealth v. Maione,* 227 Pa. Superior Ct. 239, 324 A. 2d 556 (1974). When the officer stumbled upon the heroin in plain view, he had a right to search the entire automobile. *Commonwealth v. Shaffer,* 447 Pa. 91, 288 A. 2d 727 (1972). The case was tried before Judge Merna B. Marshall, sitting without a jury, and the appellant was found guilty. His post-trial motions were denied and he was sentenced to a term of two (2) to five (5) years imprisonment.

The contention of the appellant is that the suppression order was violated by references to the suppressed nine bundles. On direct examination, the officer testified that he seized the one bundle and turned it over to the laboratory for analysis. The chemist testified that he had analyzed all the packets given to him and that each contained

heroin. The Commonwealth, in its presentation, carefully avoided mention of the number of packets or bundles analyzed.

On cross examination, it was brought out that the chemist, who in fact analyzed all the packets, could not distinguish between the suppressed bundles and the non-suppressed bundle. The appellant contends that the chemist could not legally testify to the suppressed bundle. Clearly it is logical that the police had a right to test all the bags to determine the content of heroin. The only use precluded by the suppression order is the introduction of the suppressed evidence as a part of the Commonwealth's case.

Suppressed evidence may be used in grand jury proceedings. *U.S. v. Calandra,* 414 U.S. 338, 94 S. Ct. 613, 38 L. Ed. 2d 561 (1973). Evidence suppressed as to one defendant may be introduced against another one who has no standing to object to the illegal search. *Alderman v. United States,* 394 U.S. 165, 174, 89 S. Ct. 961, 22 L. Ed. 2d 176 (1969). Suppressed evidence may even be used for impeachment purposes when a defendant takes the stand. *Walder v. United States,* 347 U.S. 61, 74 S. Ct. 354, 98 L. Ed. 503 (1954) ; *Harris v. New York,* 401 U.S. 222, 91 S. Ct. 643, 28 L. Ed. 2d 1 (1971). It may be used in parole or probation hearing. *Commonwealth v. Kates,* 452 Pa. 102, 305 A. 2d 701 (1973). See also, *Commonwealth v. Hannah,* 231 Pa. Superior Ct. 522, 332 A.2d 539 (1974). Clearly if suppressed evidence may be introduced in these circumstances, it can surely be tested for the purpose of determining the nature of the seized evidence. Since the chemist on direct examination avoided mention of the number of packets tested, it was not error for him to testify that all the material tested contained heroin. The references to the nine bundles that appear in this record were elicited on cross-examination by defense counsel.

Defense counsel knew from the testimony of the chemist that all the packets contained heroin so that the only purpose of the cross-examination was to place the Commonwealth on the horns of a dilemma, with a choice of: (1) leaving the record in a state of confusion with the created inference that the bundle seized had some how become misplaced, and because the chemist could not distinguish the non-suppressed bundle from the others, that his analysis was not related to the powder seized; or (2) divulging the suppressed evidence to the trial court in an effort to clear up the confusion, and so risk reversible error. The references made to the nine bundles were clearly the result of the defendant's trial strategy. He cannot now complain of testimony which he produced. *Commonwealth v. Battle,* 225 Pa. Superior Ct. 378, 310 A. 2d 362 (1973).

It should be pointed out that the references now complained of were not raised in post-trial motions and are raised for the first time here. *Commonwealth v. York,* 453 Pa. 317, 319, 309 A. 2d 547 (1973).

All references to the nine bundles were stricken by the trial judge. In a non-jury trial the judge is presumed to be able to disregard evidence which might be considered too prejudicial before a jury. *Commonwealth v. Dial,* 218 Pa. Superior Ct. 248, 258, 276 A. 2d 314 (1971). In *Commonwealth v. Mangan,* 220 Pa. Superior Ct. 54, 58, 281 A. 2d 666 (1971), this Court said:

"Such a risk is not present in this case where the fact finder is the judge who, in a jury trial, would be the one to give the instruction to the jury to disregard such prejudicial evidence. Certainly it is not too unreasonable to presume that he would himself obey the mandate he would have given to a jury."

The contention that the evidence was insufficient to sustain the verdict is without merit. The arresting officer testified he took 25 packets of heroin from the floor of the automobile. He also testified that he examined the appellant and that in his opinion he was not a narcotic user.

The officer had been on the narcotics squad three years and had examined approximately one thousand addicts. The appellant told the officer he was an addict. The officer testified:

"I had him take off his shirt at this time, and examined his arms, the inner arms and veins. I noticed no recent or old track marks to indicate narcotics.

"Q. No recent or old—

"A. That's correct.

"Q. What else did you observe, if anything?

"A. At this time, he said he snorted. I checked his nostril areas, noticed no inflammation of nostrils, no burnt hairs, nor powder around his—

"Q. Why did you do that?

"A. Because he said he snorted.

"Q. What do you mean by that?

"A. Snorted up his nostrils.

"Q. In other words, take narcotics by snorting up through his nostrils.

"A. Yes.

"Q. When one snorts, do you get burnt inflammation of nostril hairs.

"A. Yes."

The weight and credibility of this testimony was for the trier of fact so that it, if believed, plus evidence of the possession of the 25 packets clearly raises the inference that his possession was with the intent to sell and deliver.

Judgment of sentence is affirmed.

JACOBS, J., concurs in the result.

SPAETH, J., dissents.

———

DISSENTING OPINION BY HOFFMAN, J.:

Appellant was tried before the Honorable Merna B. MARSHALL without a jury and convicted of possession of a controlled substance with the intent to deliver same. In this appeal, appellant contends, inter alia, that the evi-

dence was insufficient to convict him of the crime charged.[1]

While driving "too slow for conditions", appellant's automobile was stopped by a police officer in the City of Philadelphia. When appellant was unable to produce a registration card, the police officer checked the serial number located on the door jamb of the car to determine whether the car had been stolen. While he was copying the number, the officer noticed a number of glassine bags bound together by a rubber band. Suspecting the bags to contain drugs, the officer arrested and handcuffed appellant. Appellant subsequently told the police that he was an addict.

At trial, the Commonwealth introduced the seized heroin[2] and a police officer's "expert opinion" that the appellant was not an addict. The bundle consisted of twenty-five glassine bags, each containing between 1.3 to 1.9 grains of a mixture of heroin and quinine.

In finding the appellant guilty, the trial court relied upon three factors: a) the evidence that appellant was not an addict; b) the narcotic being the type which was usually sold to addicts; and, c) the quantity of heroin involved. From these factors, the court stated that the inference of possession with the intent to deliver could be properly drawn.

The only evidence of appellant's not being an addict was the opinion of a police officer who, despite experience in drug investigations, had no special training to establish expertise in identifying drug addicts. Although the officer stated that he could find no needle marks on appellant, the officer did admit that appellant had previously stated that he used heroin by "snorting" it through his

---

1. Appellant's other contentions need not be considered.

2. Other quantities of drugs were also seized from appellant's car sometime after the initial seizure of the one bundle. The subsequent seizure was held to be unlawful and the drugs seized were suppressed.

nose. Although the officer opined that appellant did not "snort" narcotics, he was unable to factually support his opinion.[3] The officer did not have a physician examine appellant to determine whether appellant used narcotics. In short, the officer's opinion was so speculative as to be of little value.

The second factor, that the narcotic was the type usually sold to addicts, must be discounted entirely, for it is equally true that it would also be the type of narcotic bought and used by addicts to support a drug habit. Thus, from the type of narcotic involved, the inference that appellant intended to sell the drug is no stronger than the inference that he bought and intended to use it himself.

The final factor underlying the court's finding of guilt is the amount of heroin involved. Although there are no cases under the Pennsylvania "Controlled Substance, Drug, Device and Cosmetic Act" defining the offense of "possession with intent to deliver"[4] or the proof necessary to sustain a conviction thereunder, cases under the similar federal statute[5] allow the inference of intent to deliver to be drawn from proof of possession of a large quantity of drugs that is more likely to be consistent with trafficking in drugs than with personal use thereof. See *United States v. Mather,* 465 F.2d 1035 (5th Cir. 1972) ; *United States v. Ortiz,* 445 F.2d 1100, 1104 (10th Cir. 1971) ;

---

3. The officer stated that he could detect no indication of inflammation in the nostrils and saw no "burnt" nasal hairs. However, the officer admitted that he did not know what inflammation or "burnt" nasal hairs looked like.

4. Act of April 14, 1972, P.L. 233, No. 64, §13 (a) (30), 35 P.S. §780-113 (a) (30). The simple possession of heroin under the Act [§780-113 (a) (16)] is a misdemeanor carrying a penalty of one year imprisonment and/or a fine of five thousand dollars. See §780-113 (b). Possession with intent to deliver, however, is classified as a felony and carries much more severe penalties: fifteen years imprisonment and/or a fine of two hundred and fifty thousand dollars. [§780-113 (f)].

5. 21 U.S.C.A. §841 (a).

*United States v. Echols,* 477 F.2d 37 (8th Cir. 1973);
*United States v. Perry,* 480 F.2d 147 (5th Cir. 1973).
Although the inference is not statutorily compelled, these
cases have generally employed the test established in
*Leary v. United States,* 395 U.S. 6, 35, 89 S. Ct. 1532,
1548 (1969) that there be such a rational connection
between the inferred fact and the proven fact that it can
be said with substantial assurance that the former more
likely than not flows from the latter. See *United States
v. Mather, supra.* Applied to this case, the question is
quite simply whether a person who admits to drugs addic-
tion and possesses twenty-five small glassine packets of
heroin, possesses it with intent to deliver or for personal
use. Although twenty five bags may sound like a rather
large amount, it is, in reality a relatively small amount.
With a street value of between five to seven dollars a bag,
the bundle was worth at most one hundred and seventy-
five dollars. The total weight of the heroin and quinine
mixture at an average of 1.5 grains per bag was approxi-
mately two grams. Judicial notice may be taken of the
fact that a heroin addict, depending on the person and
the quality of the heroin, may use twenty-five bags in
a day. We may also note the fact that heroin is often
purchased in "bundles". Considering these matters, it is
my opinion that the inference of intent to deliver in this
case is no stronger than an inference of personal use.

This is not to say that such a quantity will never sup-
port such an inference. The determination is necessarily
an individualized one, depending on the facts and cir-
cumstances of each case. *United States v. Gonzalez,* 442
F.2d 698 (2d Cir. 1971). To support the inference, the
following may, in addition to quantity, be considered:
whether the defendant is a drug user; the possession of
paraphernalia for drug distribution; the purity of the
drug; the manner of its packaging; or other admissions
and behavior of the accused indicative of trafficking in
rather than simple use of narcotics. See e.g., *United*

*States v. Contreras,* 446 F.2d 940 (2d Cir. 1971); *State v. Arce,* 107 Ariz. 156, 483 P.2d 1395 (1971). These additional factors are absent in the instant case and the quantity alone does not support the inference of intent to deliver.

The judgment of sentence should be reversed and a new trial granted.