.363 A.2d 1212

**COMMONWEALTH of Pennsylvania**

v.

**James TRIBBLETT, Appellant.**

Superior Court of Pennsylvania.

Sept. 27, 1976.

---

Robert T. Gownley, Jr., Asst. Public Defender, Scranton, for appellant.

Paul R. Mazzoni, Dist. Atty., Anthony J. Popeck, Asst. Dist. Atty., Scranton, for appellee.

Before WATKINS, President Judge and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

CERCONE, Judge.

The instant appeal arises from appellant's conviction by a jury of robbery and aggravated assault. Appellant argues that evidence was introduced at trial which was discovered by police as the result of an illegal search; and, that an outburst by a spectator in the courtroom during the trial was so prejudicial that the trial court abused its discretion in refusing appellant's motion for a mistrial. With both points we disagree.

On March 7, 1975, appellant was arrested by the Scranton Police on a warrant for failure to pay a traffic fine. While appellant was at police headquarters, in another section of the building Gerard Lacey was attempting to select the picture of a man who had submitted Lacey and a friend of his to a particularly brutal and terrifying robbery in their apartment. Based upon Lacey's verbal description of his assailant, the investigating detectives, Genell and Walsh, suspected appellant might be the culprit. After apprising appellant of his *Miranda rights*, the detectives asked appellant about the robbery. Appellant responded that he had nothing to hide and knew nothing about it. The detectives then asked appellant if he would mind if they searched his apartment, and appellant said he did not. The detectives also gave appellant a "Consent to Search" form which appellant appeared to read and sign.

Appellant and the detectives then went to appellant's apartment on Capouse Street in Scranton which he shared with Edith Lydel and her four children. Mrs. Lydel answered the door and, upon learning the identity and purpose of the detectives, she stated that she did not mind if they searched the apartment either. In the living room, apparently in plain view, the detectives saw a radio which matched the description of a radio taken in the Lacey robbery. With Mrs. Lydel's permission the detectives took the radio and, when it was identified as the one

which was stolen, they arrested appellant for the instant crimes pursuant to an arrest warrant.

Appellant argues that his consent to search was invalid because it was not knowing, intelligent and voluntary. In particular, appellant contends that his limited education and his functional illiteracy, combined with the inherently coercive atmosphere of the police station, rendered his consent nugatory.

As appellant correctly states, the burden is upon the Commonwealth to prove that a challenged consent was knowing, intelligent and voluntary. *Commonwealth v. Harris,* 429 Pa. 215, 239 A.2d 290 (1968); *Commonwealth v. Dixon,* 226 Pa.Super. 569, 323 A.2d 55 (1974); *Commonwealth v. McCloskey,* 217 Pa.Super. 432, 272 A.2d 271 (1970). Given that burden of proof, in the instant case the suppression hearing court found that appellant's consent to the search was valid, and we are not inclined to disagree. First, as we stated in *Commonwealth v. Richard,* 233 Pa.Super. 254, 260, 336 A.2d 423, 426 (1975), "great deference should be given to the decision of the hearing court since that court has had the opportunity to observe the appearance and demeanor of the witnesses and the defendants." See also *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). In a well-considered opinion, the suppression judge in the case at bar, Walsh, J., concluded that appellant's demeanor and his narration of the circumstances at the hearing belied his allegation that he was incapable of understanding and intelligently waiving his constitutional rights. Furthermore, the court found that appellant's inability to read was not of crucial importance since the detectives orally apprised appellant of his rights, also. As we held in *Commonwealth v. Rhoads,* 225 Pa.Super. 208, 211, 310 A.2d 406 (1973), even an individual who is uneducated and illiterate can validly waive his constitutional rights when he can give a coherent narrative of

the facts and can otherwise demonstrate the necessary intelligence to understand and respond to questions asked of him. See also *Commonwealth v. Abrams*, 443 Pa. 295, 278 A.2d 902 (1971). Based upon appellant's testimony at the suppression hearing herein, the court was satisfied that the circumstances indicated that appellant's consent was knowing and intelligent. Finally, the circumstances of appellant's consent at the police station do not, *ipso facto*, require a finding that appellant's consent was involuntary. In *Commonwealth v. Richard*, 233 Pa.Super. 254 at 261, 336 A.2d 423 at 426, our court stated:

> "Perhaps the most persuasive fact in concluding that a consent was voluntarily granted despite the coercive atmosphere of an arrest is the furnishing of advice to the consenter concerning his constitutional rights, especially his right to refuse to consent."

The suppression court found upon ample evidence that appellant was apprised of all his constitutional rights, including his right not to consent. There is, therefore, no basis upon which we can find that it abused its discretion in refusing to suppress the fruits of the search.[1]

Appellant's other allegation of error concerns an outburst by Mrs. Lydel during defense counsel's summation to the jury. At that time Mrs. Lydel, who did not testify at trial and was a complete stranger to the jury, stood up and began screaming. "He threatened my life. He's going to jail," or words to that effect. She continued her ravings as she was removed from the courtroom by officers of the court. Counsel immediately moved for a mistrial which the court denied. The court did, however, ad-

---

1. Because of our disposition of this issue on the basis of the discussion above, we need not reach the issue of whether Mrs. Lydel's consent to the search constituted a sufficient independent basis to admit the seized radio into evidence at appellant's trial. Cf. *Commonwealth ex rel. Cabey v. Rundle*, 432 Pa. 466, 248 A.2d 197 (1968); *Commonwealth v. Rhoads*, supra.

monish the jurors to eliminate that outburst from their minds and base their verdict solely on the evidence.[2]

A motion for a mistrial rests within the sound discretion of the trial court; and, when the court moves expeditiously to correct any prejudicial effect which a courtroom event may have on the jury's decision, appellate courts will not readily find that the trial court's discretion was abused in denying the motion. *Commonwealth v. Hawkins*, 448 Pa. 206, 292 A.2d 302 (1972). In addition, courts are even less inclined to grant a motion for a mistrial when the conduct complained of was not the product of the court, counsel, or the parties. *Commonwealth v. Gwyn*, 441 Pa. 546, 272 A.2d 891 (1971). See also *Commonwealth v. Garrison*, 443 Pa. 220, 279 A.2d 750 (1971).

[5] Turning to the basis for the motion for a mistrial in the context of the instant case, an unsolicited outburst from a spectator in the courtroom, we find *Commonwealth v. Evans*, 465 Pa. 12, 348 A.2d 92 (1975), where a murder victim's daughter cried uncontrollably while the defendant was testifying to be on point. Therein our Supreme Court, per Pomeroy, J., unanimously stated:

"We have in the past found courtroom outbursts which were at least as serious, if not more so, than the one here in question, to be non-prejudicial. *Commonwealth v. Hawkins*, 448 Pa. 206, 292 A.2d 302 (1972),

2. Part of the court's admonition was as follows:
"[Y]ou are to make your decision based solely on the evidence that you hear here in the courtroom and not on any outbursts that might occur in the courtroom or any comments or noise that you might hear in the hallway, and, in particular, with reference to this trial in which we are now sitting, I want you to bear in mind, and I'm sure you will, that any comments that were made during the course of this little outburst should not, in any way, be considered by you, either in favor of, or against the Defendant or the Commonwealth in this case. These things will happen and what did happen has nothing to do with the trial of this case, and of course, you should put out of your mind anything other than the testimony that was heard in this courtroom in trying to reach your decision."

midway through defense counsel's closing argument, the brother of a murder victim stood up and shouted, 'He murdered him. You are a bum'; we refused to find this so 'inherently prejudicial that its effect could never be eradicated from the collective mind of the jury.' Id. at 219, 292 A.2d at 308. *In Commonwealth v. Glover*, 446 Pa. 492, 286 A.2d 349 (1972), the claim was that the defendant 'was denied a fair trial because of an outburst of laughter by spectator-police officers during the opening address to the jury by defense counsel.' *Id.* at 495, 286 A.2d at 351. We declined so to hold, characterizing the incident as being 'not of serious proportions' and concluding that 'no prejudice resulted.' *Id.*" 465 Pa. at 18–19, 348 A.2d at 95.

Given the brevity of the outburst, the less damaging nature of the conduct than that of the above-quoted cases, and the promptness and vigor of the court's admonition to the jury in the instant case, we find that the court did not abuse its discretion in denying appellant's motion for a mistrial.

Judgments of sentence affirmed.