408 A.2d 1100

**COMMONWEALTH of Pennsylvania**

**v.**

**Eugene SOJOURNER, Appellant.**

Superior Court of Pennsylvania.

Argued June 13, 1977.

Filed July 12, 1978.

Rehearing Granted Aug. 21, 1978.

David Rudovsky, Philadelphia, for appellant.

Eric B. Henson, Assistant District Attorney, with him F. Emmett Fitzpatrick, District Attorney, Philadelphia, for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

SPAETH, Judge:

Appellant was convicted of violations of the Controlled Substance, Drug, Device and Cosmetic Act, Act of April 14, 1972, P.L. 233, No. 64, § 13(a)(16) and (30), as amended, 35 P.S. § 780–113(a)(16) and (30). He makes four arguments for a new trial: (1) his motion to suppress evidence should have been granted; (2) the Commonwealth failed to prove intent to deliver; (3) the trial judge erred in charging the jury; and (4) the trial judge responded inadequately to prosecutorial misconduct. We reverse the conviction on the basis of the last argument.

–1–

On the night of December 12, 1975, two Philadelphia motorcycle police officers saw a car being driven by appellant without tail lights. The officers signaled appellant to pull over. Appellant pulled over and got out of his car but as the officers were alighting from their motorcycles, he walked away. When Officer Steven Girard called out to him, appellant began to run toward a quadrangle of apartment houses. Girard, on his motorcycle, gave chase. During the chase, from a distance of about 50 feet, Girard saw appellant throw something to the ground. After a chase of several blocks, Girard caught appellant and found the car keys in appellant's hand and the owner's card in his pocket; appellant had no driver's license. When Girard's fellow officer arrived, the two officers returned to the spot where Girard had seen appellant throw something, and found two foil packets, each containing 25 small glassine bags of what later proved to be heroin.

Appellant argues that his action of throwing away the heroin was a "forced abandonment," *Commonwealth v. Jeffries,* 454 Pa. 320, 311 A.2d 914 (1973), because the officers had no probable cause to arrest him, and therefore should not have chased him.

For purposes of discussion we may agree with appellant that the officers had no probable cause to arrest him; it does not follow that they should not have chased him. In *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the Court held that a police officer suspecting criminal activity is justified in making a brief investigatory stop of someone when the officer can point to "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion," *id.* at 21, 88 S.Ct. at 1880. In *Commonwealth v. Hayes,* 237 Pa.Super. 510, 352 A.2d 121 (1975), this court held that police officers were justified in stopping two persons while checking to see whether there had been a burglary in a building the two persons had been seen leaving with boxes, a television set, and a portable typewriter. Here, having seen appellant driving without tail lights the officers were justified in stopping appellant to ask for identification and data on his car. The Vehicle Code, Act of July 16, 1970, P.L. 487, No. 166, § 1, 75 P.S. § 1221; currently, Act of June 17, 1976, P.L. 162, Act No. 81, as amended, *eff.* July 1, 1977, 75 Pa.C.S.A. § 6308. The officers could assume that appellant knew what they were about to ask him for. When appellant ran away, the officers had reason to suspect that something more than a routine traffic violation had occurred, for example, that the car was stolen. Officer Girard was therefore justified in chasing appellant; that was the only way he would be able to make a brief investigatory stop of appellant. We do not have to decide whether upon catching appellant, the officers were justified in ultimately arresting him, for appellant's action of throwing away the heroin was not a "fruit" of the arrest but of the lawful pursuit. *Jeffries* is distinguishable. There the suspect had done nothing unlawful or suspicious to justify a police pursuit; he had

merely quickened his pace as the police observed him from their vehicle.

–2–

■ We find no merit in appellant's argument that the Commonwealth failed to prove intent to deliver. An officer with considerable experience as an undercover agent testified that a person who had "two bundles, 50 bags" "more than likely [had them] for sale." N.T. 82. This was sufficient to permit the jury to infer intent to deliver. *See Commonwealth v. Harris,* 241 Pa.Super. 7, 359 A.2d 407 (1976) (16 half spoons of heroin); *Commonwealth v. Wright,* 234 Pa.Super. 83, 339 A.2d 103 (1975) (25 bags); *Commonwealth v. Brown,* 232 Pa.Super. 463, 335 A.2d 782 (1975) (25, 25, and 21 bags in respective bundles).

–3–

Appellant argues that the trial judge erred in charging the jury that (as appellant summarizes the charge) "the Commonwealth's burden of proving that appellant was not licensed to possess a controlled substance could be satisfied by proof of flight and discarding of the narcotics." Appellant's Brief at 10. This argument involves two issues, which may be considered separately.

(a)

The first issue involved in appellant's argument regarding the charge is whether the Commonwealth does have the burden of proving that an accused was not licensed to possess a controlled substance. The Commonwealth argues it does not.

It is reasonable to read the charge as instructing the jury that the Commonwealth has this burden.[1] The Common-

---

1. The trial judge said:
 [I]n order to find a defendant guilty of that charge [possession with intent to deliver the heroin] you must find beyond a reasonable doubt that he possessed this heroin, if you find that he possessed it at all, with the intent to deliver it and that he was not a licensed medical practitioner.
 N.T. 194.

wealth correctly notes, however, that this court has held in *Commonwealth v. Stawinsky,* 234 Pa.Super. 308, 339 A.2d 91 (1975), *allocatur denied,* that non-registration is not an element of the crime defined by § 13(a)(30), of the Controlled Substance, Drug, Device and Cosmetic Act, *supra,* 35 P.S. § 780–113(a)(30), and therefore need not be proved by the Commonwealth.

In *Stawinsky,* we relied on *Commonwealth v. Stoffan,* 228 Pa.Super. 127, 323 A.2d 318 (1974), where we discussed the various factors to be considered in deciding what is and what is not an essential element of a crime.[2] Since *Stawinsky,* however, the Supreme Court has decided *Commonwealth v. McNeil,* 461 Pa. 709, 337 A.2d 840 (1975). There the prosecution was under § 628(e) of the Uniform Firearms Act, Act of June 24, 1939, P.L. 872, § 628(e), as amended, 18 P.S. § 4628(e) (Supp.1974), now Act of Dec. 6, 1972, P.L. 1482, No. 334, § 1, 18 Pa.C.S.A. § 6106(a), which provided:

**2.** In *Stoffan* it is said:
"[A] number of different factors must be considered: the wording of the exception and its role in relation to the other words in the statute; whether in light of the situation prompting legislative action, the exception is essential to complete the general prohibition intended; whether the exception makes an excuse or justification for what would otherwise be criminal conduct, *i. e.,* sets forth an affirmative defense; and whether the matter is peculiarly within the knowledge of the defendant."
228 Pa.Super. at 141, 323 A.2d at 324.
*Stoffan* also drew a distinction between proof of a status such as a defendant's being a registered medical doctor, which can be easily proved by the defendant, and proof of whether or not an activity had occurred, which would put a greater and impermissible burden on the defendant.
The Crimes Code, Act of Dec. 6, 1972, P.L. 1482, No. 334, § 1, 18 Pa.C.S.A. § 103, defines "element of an offense" as "[s]uch conduct or such attendant circumstances or such a result of conduct as: . . . negatives an excuse or justification for such conduct." It defines "material element of an offense" as "[a]n element that does not relate exclusively to the statute of limitations, jurisdiction, venue or to any other matter similarly unconnected with: . . . (2) the existence of a justification or excuse for such conduct." For the thicket one finds oneself in when applying these definitions, *see* the discussion in *Commonwealth v. Poindexter,* 248 Pa.Super. 564, 375 A.2d 384 (1977), between the majority opinion (esp. n. 4, *Id.,* 248 Pa.Super. at 569, 375 A.2d at 387) and Judge HOFFMAN, dissenting, *id.,* 248 Pa.Super. at 570, 375 A.2d at 388.

No person shall carry a firearm in any vehicle or concealed on or about his person, except in his place of abode or fixed place of business, without a license therefor as hereinafter provided.

Without elaboration, the Court held that "[t]he structure of the statute and the nature of the prohibition convince us that the absence of a license is an essential element of the crime," to be proved by the Commonwealth. *Id.*, 461 Pa. at 715, 337 A.2d at 843. Although the Court cited *Commonwealth v. Stoffan, supra*, it did so only obliquely (the cite was *cf.*); the Court did not indicate whether it had arrived at its decision after consideration of the factors discussed in *Stoffan*.

While it may be granted that the brevity of the Court's discussion in *McNeil* leaves one in some uncertainty, nevertheless, given *McNeil*, we conclude that *Stawinsky* can no longer be regarded as good law; the similarity between § 628(e) of the Uniform Firearms Act, *supra*, 18 Pa.C.S.A. § 6106(a), and § 13(a)(30) of the Controlled Substance, Drug, Device and Cosmetic Act, *supra*, 35 P.S. § 780–113(a)(30), is too close to permit sensible distinction. Thus, § 13(a)(30) forbids

the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, as a practitioner not registered or licensed by the appropriate state board . . . . .

This is substantially the same as saying that "[n]o person shall carry a firearm in any vehicle or concealed about his person . . . without a license as hereinafter provided." We therefore conclude that the trial judge was correct in instructing the jury that the Commonwealth had the burden of proving that appellant was not licensed to possess a controlled substance.

–b–

The second issue involved in appellant's argument regarding the charge is whether the trial judge was correct in instructing the jury that it could infer that appellant was

not licensed to possess a controlled substance from the evidence that appellant had fled and had thrown away the heroin.

It is clear that the use of inference to prove a necessary element of a crime is not barred by the due process clause, *Barnes v. United States*, 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973), although the fact inferred must follow beyond a reasonable doubt from the facts proved, *Commonwealth v. Turner*, 456 Pa. 116, 317 A.2d 298 (1974) (Mr. Justice ROBERTS, concurring). As appellant notes, however, the mere desire to avoid arrest, even if arrest will certainly end in exoneration, might motivate a licensed person to dispose of drugs and flee from the police. Consequently, appellant argues it was error for the trial judge in his charge to refer the jury to the evidence that appellant had fled and thrown away the heroin. In response to this argument, the trial judge in his opinion has cited other evidence to which the jury might have been referred— for example, that appellant had for the past several years operated a record store. However, we need not decide whether as given the charge was adequate. Appellant objected to the charge, but on a different ground (N.T. 198). He thereby waived the objection he makes now. *Commonwealth v. Williams*, 458 Pa. 319, 326 A.2d 300 (1974); *Commonwealth v. Keysock*, 236 Pa.Super. 474, 345 A.2d 767 (1975).

-4-

The facts pertinent to appellant's argument regarding prosecutorial misconduct may be stated as follows.

During testimony by the prosecution's expert witness (a Philadelphia police officer) about the drug trade, an individual who later proved to be another officer assigned to narcotics and one of the witness's back-up team was seated in the spectator section of the courtroom and conducted himself oddly. Defense counsel said to the trial judge that he had observed some of the conduct, and that a spectator friend of appellant had also seen it and had remarked on it.

Counsel described the conduct as "nodding, scratching his arm, shaking and making physical movements of the head back and forth." Lower Court Opinion at 7; also, Brief for Appellant at 15. Counsel said that the individual looked like a junkie "sitting there in pinkish red slip-on shoes, pink slacks, a white shirt with bright pink flowers, with the shirt outspread", N.T. at 95, and he argued that the jury could mistakenly infer that the individual was linked to appellant, perhaps as a buyer of drugs. The trial judge responded that while he had not been watching the spectators at all times, he had observed nothing amiss, and that the jurors' attention did not, to his knowledge, wander from the witness. Defense counsel nevertheless asserted that he had seen jurors watching the odd conduct that he had described to the judge.

The resolution of this strange incident was complicated by actions of the prosecutor. Defense counsel requested the trial judge to instruct the individual to identify himself to the jurors as a narcotics agent. (It is not clear how the defense learned that he was a narcotics agent.) The request was denied. Counsel then asked that the individual's name be revealed so that he could be questioned or called as a defense witness. In the presence of the prosecutor, the trial judge ordered defense counsel to find out the individual's name. By that time the individual had disappeared. Counsel therefore inquired of the remaining police officers who were witnesses. The prosecutor, however, told the officers they did not have to answer, and they did not. When defense counsel reported this, the judge reprimanded the prosecutor, and ordered the prosecutor to obtain the individual's name. The prosecutor subsequently identified the individual as Officer Morse. By that time, however, Officer Morse was gone and the jury had been dismissed for the day.

Defense counsel requested a declaration of a mistrial, or failing that, an evidentiary hearing or a voir dire of the jury. The trial judge denied all of these requests. The judge said he would cover the incident in his instruction to the jury to consider only evidence it had heard in testimony. In his

482

instructions, the judge did give an instruction to this effect; however, he made no specific reference to Officer Morse's conduct.

■ The declaration of a mistrial upon misconduct by spectators (or others) is normally within the trial judge's discretion, *Commonwealth v. Evans*, 465 Pa. 12, 348 A.2d 92 (1975), with the judge deciding whether there has been prejudice. This principle, however, is not dispositive here. Thus in cases affirming a judge's refusal to order a mistrial, it is evident that the judge had *himself* observed the dubious activity and was capable of evaluating its possible effect on the jury. For example, in *Evans*, which involved weeping by a witness, the Court said:

> We cannot say that the trial court, *which of course observed the episode*, was wrong in believing that the jury had not been swayed because the incident was of minimal impact or that the court abused its discretion in denying the motion for a mistrial.

465 Pa. at 18, 348 A.2d at 95 (emphasis supplied).

Furthermore, in most cases curative instructions were immediately given, with specific reference to the incident. *Commonwealth v. Haskins*, 448 Pa. 206, 292 A.2d 302 (1972); *Commonwealth v. Triblett*, 242 Pa.Super. 164, 363 A.2d 1212 (1976). In the case at hand, the trial judge did not himself observe the conduct in question. He said he saw nothing unusual, but acknowledged that he was not looking at the spectators or jury at all times. The conduct consisted of gestures rather than an audible outburst, and so it is not surprising that it escaped the judge's notice. The judge was therefore unable to evaluate its effect on the jury. Also, the judge's curative instructions were of the most general nature and came only at the end of the trial.[3]

■ Misconduct in the courtroom is a serious matter. The onus is on the trial judge to avert or cure it:

3. The judge states that he was worried that a specific reference would exaggerate the incident. N.T. at 107.

[I]t is the duty of the court to see that trial proceedings are conducted in an orderly manner and any disturbance or outbursts should be checked immediately by the court *on its own motion*. Misconduct on the part of a trial audience should never be tolerated and should immediately be suppressed in a manner as to impress upon the jury the impropriety and injustice of such conduct.

*Commonwealth v. Glover*, 446 Pa. 492, 495, 286 A.2d 349, 351 (1972) (emphasis in original).

 Similarly,

The trial judge should take appropriate steps . . . to insure that the jurors will not be exposed to sources of information or opinion, or subject to influences, which might tend to affect their ability to render an impartial verdict on the evidence presented in court.

*ABA Standards Relating to The Administration of Criminal Justice*, Part V, § 5.2 (1974).

We cannot say that the trial judge fulfilled this responsibility. As has been discussed, the judge himself could not evaluate the effect on the jury of the conduct in question; he therefore had a duty to inquire further. The issue raised by counsel was important. It was not unreasonable of counsel to fear that the jury might infer a connection between appellant and the individual who was conducting himself so strangely. It is fundamental to due process that an accused may not be convicted on the basis of anything not admitted into evidence. *Commonwealth ex rel. Valentine v. Strongel*, 246 Pa.Super. 466, 371 A.2d 931 (1977); *Wood v. Tucker*, 231 Pa.Super. 461, 332 A.2d 191 (1974). Where the action of the trial judge is inadequate to insure that the jury will consider only the evidence, a new trial must be awarded. *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) (jury may have considered confession not admissible against defendant). Here, instead of recognizing that defense counsel's fear was reasonable, and responding to counsel's suggestion of alternative means of determining how the jury might have been affected by the conduct counsel had described, the trial judge chose to

reject all of counsel's suggestions, and to take what in practical effect was substantially no action.[4]

Judgment of sentence vacated and a new trial awarded.

VAN der VOORT, J., filed a dissenting opinion in which JACOBS, President Judge, joins.

WATKINS, former President Judge, and PRICE, J., did not participate in the consideration or decision of this case.

VAN der VOORT, Judge, dissenting:

The appellant, Eugene Sojourner, appeals to this Court following conviction in a jury trial, denial of post-trial motions, and sentencing on charges of possession and possession with intent to deliver controlled substances. See Controlled Substance, Drug, Device and Cosmetic Act, Act of April 14, 1972, P.L. 233, No. 64, § 13(a)(16) and (30), as amended, 35 P.S. § 780–113(a)(16) and (30). He raises several arguments on this appeal.

The record shows that on December 12, 1975, two motorcycle officers noticed a car being driven during night hours without tail lights. Appellant was the operator of the vehicle and was signalled by the officers to pull to the curb and stop. Appellant did so but immediately left the auto and began to walk away as the officers were getting off of their motorcycles. When one of the officers called out to him to stop, the appellant suddenly began to run in the direction of some nearby buildings. One of the officers followed on his motorcycle, and the chase covered several blocks. During the course of the pursuit, the officer saw appellant discard two foil packets. After eventually apprehending the appellant, the officers retrieved the packets and found them to each contain twenty-five glassine envelopes,

4. We do not reach the question whether the improper conduct of prosecution counsel in impeding the trial judge's order regarding the identity of Officer Morse in itself warrants the grant of a new trial. To the extent that the result we have reached would serve to preclude recurrence of such conduct, our disapproval of the conduct may be noted. Also we do not reach appellant's argument that the sentence was excessive.

all holding a substance later proved to be heroin. Appellant, when caught, was in possession of the keys to the car which police had stopped, as well as the owners card for the same vehicle.

The appellant first contends that the drugs should have been suppressed as evidence because officers had no probable cause to arrest him and his act of discarding the heroin was a "forced abandonment." He cites *Commonwealth v. Jeffries*, 454 Pa. 320, 311 A.2d 914 (1973), to support this argument. I find appellant's reliance on *Jeffries* to be misplaced and his contention of no probable cause to be without merit.

In *Jeffries*, the appellant had done no more than walk more quickly as he was observed by police. It was held that such conduct did not, standing alone, provide probable cause for the police conduct. In the instant case, the appellant's car was stopped for proper police investigation. The lack of rear lights was in violation of the then effective provisions of the Vehicle Code. See Act of Nov. 28, 1973, P.L. 344, No. 119, § 1 (now set forth in the Act of June 17, 1976, P.L. 162, No. 81, § 1, 75 Pa.C.S. § 4303.) Under these circumstances the police were clearly authorized to stop the appellant's car. See Act of July 16, 1970, P.L. 487, No. 166, § 1, 75 P.S. § 1221.[1] Appellant's sudden abandonment of his auto, flight from the scene and failure to heed police requests to stop, established sufficient facts to warrant the officers' belief that criminal activity may have been afoot.[2] The chase which ensued and appellant's attempted disposal of what appeared to be a packet of drugs, render ridiculous appellant's claim that police lacked probable cause for his arrest. *Commonwealth v. Hunter*, 240 Pa.Super. 23, 360 A.2d 702 (1976). I find no merit in appellant's "forced abandonment" theory.

1. The relevant provisions of the currently effective vehicle law may be found in the Act of June 17, 1976, P.L. 162, Act No. 81, as amended, 75 Pa.C.S. § 6308.

2. See *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

Appellant next contends that there was insufficient evidence to prove any intent to deliver the heroin. In view of the quantity of drugs seized, and testimony by an officer, with experience in the field, that possession of such a volume indicated that it was possessed for sale, the jury had sufficient evidence upon which it could properly conclude appellant had an intent to deliver. Our Court has reached such a conclusion in other cases involving analogous facts and quantities of drugs. *Commonwealth v. Harris*, 241 Pa.Super. 7, 359 A.2d 407 (1976); *Commonwealth v. Wright*, 234 Pa.Super. 83, 339 A.2d 103 (1975); *Commonwealth v. Brown*, 232 Pa.Super. 463, 335 A.2d 782 (1975).

It is next argued that the trial court erred in instructing the jury that the Commonwealth's burden of proving that appellant was not licensed to possess a controlled substance could be satisfied by proof of appellant's flight and discarding of the narcotics. While the appellant took an exception to the announced intent of the court to charge in this manner prior to the charge, a review of the record shows that he did not include this challenge to the charge in written post-trial motions. The lack of license portion of the charge was the subject of some discussion in appellant's brief in support of post-trial motions. In its opinion however, the lower court does not discuss this license issue in relationship to its charge, but rather addresses the additional argument of appellant that the evidence was not sufficient to convict (on the intent to deliver charge) in the absence of evidence of non-licensure. The appellant does not pursue the sufficiency issue as to non-licensure on appeal. Under these circumstances, where the argument on the jury charge was not included in written post-trial motions and was not considered by the lower court in its opinion, I would hold that it was waived for purposes of appellate review. See *Commonwealth v. Perillo*, 474 Pa. 63, 65–66, 376 A.2d 635, 636–637 (fn. 2) (1977).

Next, appellant argues that the prosecuting attorney deliberately attempted to prejudice the jury by asking a defense witness why the appellant would need the services of a

free public defender at trial if he was a businessman having ownership of a record store. This issue like the prior one, was briefly mentioned in appellant's brief in support of post-trial motions, but was not preserved in written post-trial motions by appellant, and was not discussed by the lower court in its extensive opinion in this case. Thus, I would find that this issue was also waived for purposes of appellate review. *Commonwealth v. Perillo, supra.*

Last, appellant raises a second claim of alleged prosecutorial misconduct. In this regard he relates that one of the spectators at trial, dressed in rather ostentatious clothing, engaged at one time in conduct described by appellant's counsel as ". . . nodding, scratching his arm, shaking and making physical movements of the head back and forth." The spectator was later discovered to be a police officer associated with the narcotics unit to which some of the prosecution police witnesses were assigned. Counsel for appellant requested a mistrial, suggesting that the spectator appeared to be a drug user and arguing that the jurors might have concluded he was associated with the appellant, perhaps as a buyer of drugs.

In evaluating the lower court's denial of the mistrial motion, we must be mindful that the trial court is granted discretion in the conduct of a trial in general, as well as with regard to decisions on mistrial requests based upon alleged conduct of trial spectators. *Commonwealth v. Evans,* 465 Pa. 12, 348 A.2d 92 (1975); *Commonwealth v. Garrison,* 443 Pa. 220, 279 A.2d 750 (1971); *Commonwealth v. Flood,* 302 Pa. 190, 197, 153 A.2d 152, 154 (1930). I can discern no abuse of that discretion in the instant circumstances. The trial judge noted at the time of the motion (and out of the jury's hearing) that he had observed that the jury's attention had been "riveted" on the testifying witness during the entire time when the spectator conduct was alleged to have occurred. Moreover, the trial judge noted that he had looked around the courtroom while the conduct was supposedly taking place and had not noticed any of the gestures suggested by defense counsel. In response to defense requests

488

that the spectator stand to announce his identity as a police officer or that the jury be polled regarding the incident, the trial judge refused on the basis that he did not want to exacerbate any problem. The court, in its charge, directed the jurors to consider only the evidence they had heard in testimony. In my consideration of this issue, it must be recognized that this single incident allegedly occurred in a trial which covered two days, produced a transcript of over two hundred pages, and featured strong evidence of the appellant's guilt on the narcotics charges against him. In light of all of these factors, I cannot conclude that the lower court abused its discretion in the denial of the mistrial motion raised by appellant.

I would affirm the judgment of sentence.

JACOBS, President Judge, joins in this dissenting opinion.