410 A.2d 354

**COMMONWEALTH of Pennsylvania**

**v.**

**Adam Andrew TOPA, Appellant.**

Superior Court of Pennsylvania.

Argued July 9, 1979.

Filed Sept. 14, 1979.

Petition for Allowance of Appeal Denied Dec. 10, 1979.

Reargument Denied Feb. 11, 1980.

Peter G. Loftus, Scranton, for appellant.

William J. Garvey, Assistant District Attorney, Scranton, for Commonwealth, appellee.

Before WIEAND, NIX and WEKSELMAN, JJ.*

WEKSELMAN, Judge:

Appellant, Adam Andrew Topa, was charged with the killing of Ellen Walsh. The case was tried to a jury and Topa was convicted of first degree murder on June 11, 1973. His post-trial motions were denied and he was sentenced to a term of life imprisonment. On appeal, the Pennsylvania Supreme Court held that the introduction into evidence of testimony based on the use of voiceprint analysis was error which required reversal of the judgment of sentence and the award of a new trial. *Commonwealth v. Topa,* 471 Pa. 223, 369 A.2d 1277 (1977). The matter was retried in conformity with the mandate of the Pennsylvania Supreme Court and appellant was once again convicted of murder in the first degree and, after denial of timely post-trial motions, was again sentenced to life imprisonment. His motion for reconsideration of the judgment of sentence was denied and he now appeals the judgment of sentence.

The facts of the case are outlined in the Opinion of the Supreme Court in *Commonwealth v. Topa, supra,* but it is necessary to summarize them again in order that appellant's allegations of error may be placed in proper focus. We are required to review the evidence in the light most favorable to the Commonwealth as verdict winner. *See, Common-*

---

* Justice ROBERT N. C. NIX, Jr. of the Supreme Court of Pennsylvania and Judge I. MARTIN WEKSELMAN of the Court of Common Pleas of Allegheny County, Pennsylvania, are sitting by designation.

wealth v. *Robson,* 461 Pa. 615, 337 A.2d 573 (1975); *Commonwealth v. Boyd,* 461 Pa. 17, 334 A.2d 610 (1975); *Commonwealth v. Murray,* 460 Pa. 605, 334 A.2d 255 (1975). So viewing the evidence, the trial record established the following:

On Sunday, October 22, 1972, at about 12:30 p. m., the body of Ellen Marie Walsh was discovered in a remote dump area near St. Patrick's Cemetery, Blakely, Pa. The victim died from massive bleeding caused by 35 stab wounds. At about 5:10 p. m. Blakely police observed appellant driving his pickup truck about 20 feet from the general area where the body had been discovered. After turning his head in the direction of the police, appellant accelerated and drove away rapidly. At 5:25 p. m. a call was received at Scranton Police Headquarters which was automatically tape recorded. The caller identified himself as Roger Ferretti and stated that he had just stabbed a woman in the cemetery on the Carbondale Highway. He stated that he was calling from the V.F.W. in Jessup. At trial Roger Ferretti, an acquaintance of appellant, denied making the call and identified the voice on the tape as that of appellant. At 6:20 appellant was observed entering the V.F.W. Ten minutes later the District Attorney and a state trooper spoke to appellant. The trooper noticed what appeared to be blood on appellant's jacket. The District Attorney advised appellant of his rights. Search warrants were obtained for the jacket and appellant's left shoe, which also appeared to have blood on it. Analysis showed that the blood on appellant's jacket was consistent with the victim's blood and inconsistent with appellant's. Analysis of the blood stain also revealed red wool fibres therein which were identical with the red wool fibres in the jacket worn by the decedent. A button found near the body was determined to be identical to the buttons on appellant's jacket, from which a button was missing. Appellant was seen with the decedent at bars in Jessup and Scranton between 8:00 and 10:00 p. m. on October 21, 1972. The bartender at the Jessup V.F.W. testified that about 7:20 p. m. on October 21, 1972, a call came for appellant from a woman who identified herself as Ellen Walsh.

Appellant contends that the trial Court erred in admitting the tape recording of the telephone call to the Scranton police because the taping violated the applicable anti-wire-tapping statute. We are in agreement with the Court below that the applicable statute need not be read as appellant reads it and that the cases upon which he relies are distinguishable. The Pennsylvania Anti-Wiretapping Statute, 18 P.S. § 3742, since repealed and re-enacted using substantially similar language, provided in relevant part:

"No person shall intercept a communication by telephone or telegraph without permission of the parties to such communication. No person shall install or employ any device for overhearing or recording communications passing through a telephone or telegraph line with intent to intercept a communication in violation of this act. No person shall divulge or use the contents or purport of a communication intercepted in violation of this act."

A criminal statute of the Commonwealth, 18 Pa.C.S. § 5702, provides:

"A person commits a misdemeanor of the second degree if he: (1) intercepts without permission of the parties to the communication a message or other communication by telephone or telegraph; (2) installs or employs any device for overhearing or recording communications passing through a telephone or telegraph line with intent to intercept a communication in violation of this chapter; or (3) divulges or uses without the consent of the sender or receiver the existence or contents of any such message or other communication if the actor knows that the message was illegally intercepted, . . . "

In *Commonwealth v. McCoy, (Papszycki)*, 442 Pa. 234, 275 A.2d 28 (1971), our Supreme Court stated that the statute contained no exceptions, even for interceptions by governmental authorities engaged in attempts to apprehend criminals. In *Commonwealth v. Murray*, 423 Pa. 37, 223 A.2d 102 (1966), our Supreme Court held that the statute was violated where a private detective had attached a device for listening and recording on certain telephone lines without permission

of the caller-defendant. In *Commonwealth v. Gullett*, 459 Pa. 431, 329 A.2d 513 (1974), our Supreme Court considered a situation very similar to the instant situation. There, the police were also informed by a telephone call of the occurrence of a homicide and the location where the body could be found. The Court there held that:

"From the nature of the call, the non-confidential quality of the information conveyed, the emergency atmosphere the communication engendered, and the particular agency to which the disclosure was directed, it is apparent that the caller did not intend the privacy of the communication to be maintained. Rather, the conclusion is inescapable that a call made under these circumstances carried with it the permission of the caller to divulge the communication to authorized police personnel other than the officer who happened to take the message and to use the communication to investigate the reported crime by any reasonable means. We thus hold that on these facts there was no violation of [the Anti-Wiretapping Statute]."

Appellant urges that *Gullett* cannot be applied to the case at bar because the Supreme Court there merely authorized the use of the material for investigative purposes by reasonable means. The issue of whether the tape could be used at trial was not before the Court at that time. As we read *Gullett*, however, it concluded that the tape had been made with the implied consent of the parties and was, therefore, not in violation of the Act of 1957. A similar consent can be implied from the facts of the case at bar. Appellant, although using an assumed name, called the police to report a crime. He spoke to a number of officers during the course of the conversation. His purpose was to instigate an investigation and to cast suspicion upon someone else. We agree with the Court below that there can be no stronger fact situation for supplying the implied consent discussed in *Gullett* and we see no reason why it may not be used as evidence.

Appellant further argues, however, that the use of the tape at trial was improper because of the provisions of Act

30, House Bill No. 749, Session of 1976, entitled "Invasion of Privacy—Telephone or Telephone Communications," which amended 18 Pa.C.S. § 5702, by adding a section which permits the recording of telephone communications coming into and going out of police departments but which forbids the use of such recordings in any court proceeding except in limited situations inapplicable to the present controversy. That statute became effective on April 7, 1976, and may be applied only prospectively. In *Commonwealth v. Salvatori,* 236 Pa.Super. 140, 345 A.2d 725 (1975), the Court stated:

> "The determinative factor is not the date that the case goes to trial but the date that the activity which produced the evidence in question was engaged in."

The tape here in question was made on October 22, 1973, and, as we have held, was not violative of the law as it then existed. Since it was legally admissible when made, it was admissible at trial.

Appellant next urges that the trial Court erred in permitting Roger Ferretti to identify the voice on the tape. Obviously it was necessary for the Commonwealth to identify the caller and, since the earlier decision of the Supreme Court forbade the use of voiceprint analysis, the Commonwealth sought to identify the voice on the tape through the testimony of Roger Ferretti. In order for the recording to have been received in evidence, it must have been established that it was a true and correct reproduction of the statements made and the voices thereon must be properly identified. *Commonwealth v. Wright,* 227 Pa.Super. 134, 323 A.2d 349 (1974). The police officer who received the call verified the tape as a true and correct reproduction of the phone call he received but he was unable to identify the voice of the caller. The Court permitted Roger Ferretti to testify as to the identity of the caller. He testified that he had known appellant for at least five years prior to 1972, that he had gone out with him socially, and had talked with him on over 100 occasions and was able to identify his voice on the tape. There was no error in this procedure. *Commonwealth v. Glover,* 446 Pa. 492, 286 A.2d 349 (1972);

*Commonwealth v. DeRohn,* 444 Pa. 334, 282 A.2d 256 (1971). The credibility of Ferretti's testimony and the weight to be given to it were proper subjects for the determination of the jury.

■ Appellant next argues that the trial Court erred in permitting a bartender at the V.F.W. to testify regarding the October 21, 1972, telephone call for appellant. The substance of a phone conversation may be testified to even though the witness is unable to identify the caller's voice if the identity of the calling party may be established by other evidence which may be circumstantial. Here, the testimony merely went to the fact of the call, not its substance. Swerdak testified that he answered the phone at approximately 7:40 p. m. on October 21, 1972, and that a woman asked to speak to Topa. Swerdak further testified that Topa asked him to find out who the caller was and that when he inquired, the woman on the line identified herself as Ellen Walsh. He was not familiar with her voice and could not have independently identified the caller as Miss Walsh. However, the caller identified herself as Ellen Walsh and other testimony placed the decedent in Topa's company from 8:30 p. m. to sometime after 10:00 p. m. that night. Such evidence was sufficiently corroborative to allow the testimony to be admitted, with the weight to be given, once again, being a question for the determination of the jury. *Commonwealth v. Glover,* 446 Pa. 492, 286 A.2d 349 (1972); *Commonwealth v. DeRohn, supra.*

■ Appellant's next allegation of error is that the trial Court erred in failing to declare a mistrial when a Commonwealth witness mentioned appellant's previous trial for the crime. Both sides made reference on several occasions to testimony in prior proceedings, thus alerting the jury to the possibility of a previous trial. Although the trial Court failed to order the witness' remark stricken or to caution the jury when it sustained appellant's objection thereto, the case differs from *Commonwealth v. Beach,* 445 Pa. 257, 284 A.2d 792 (1971), because there was no specific reference to appellant's having been convicted at the prior trial.

■ Appellant further contends that the verdict was contrary to the weight and sufficiency of the evidence. As indicated in the synopsis of the facts, there was substantial circumstantial evidence of appellant's guilt. Accepting as true all the evidence upon which, if believed, the jury could properly have based its verdict, and all reasonable inferences arising therefrom, the evidence was more than sufficient to prove appellant's guilt beyond a reasonable doubt. Although appellant offered an alibi defense, it is plain that the jury did not accept it and the jury's conclusion in that matter was based upon substantial evidence.

Finally, appellant contends that the imposition of the mandatory life sentence violates the Constitution of Pennsylvania and the Constitution of the United States, as well as Pennsylvania law. The Supreme Court has rejected prior challenges on constitutional grounds to the mandatory life sentence for second degree murder, and we see no basis for reconsidering the issue now. *Commonwealth v. Riggins*, 474 Pa. 115, 377 A.2d 140 (1977). *See also, Commonwealth v. Moody,* 476 Pa. 223, 382 A.2d 442 (1977).

Judgment of sentence affirmed.