COMMONWEALTH of Pennsylvania,
Appellee

v.

Gavin Lloyd COBB, Appellant.

Superior Court of Pennsylvania.

Argued June 22, 2011.

Filed Sept. 7, 2011.

Tedd C. Nesbit, Hermitage, for appellant.

Cynthia A. Gilkey, Assistant District Attorney, Mercer, for Commonwealth, appellee.

BEFORE: FORD ELLIOTT, P.J.E., BENDER and STRASSBURGER *, JJ.

OPINION BY STRASSBURGER, J.:

Gavin Lloyd Cobb, Appellant, appeals from the court order[1] denying his motion to dismiss charges on the basis of double jeopardy after the trial court *sua sponte* declared a mistrial over objections from both Appellant and the Commonwealth. We hold that manifest necessity did not exist to justify the trial court's declaration of a mistrial. Therefore, we reverse the trial court's denial of Appellant's motion to dismiss and order that Appellant be discharged at Counts 2 through 10 of the criminal information on the basis that Appellant's re-prosecution on these charges would violate the principles of double jeopardy.

The facts of the underlying case may be summarized as follows. On November 17, 2009, officers received a call regarding a domestic dispute in progress involving a black man with a firearm. When officers arrived at the address provided by dispatch they encountered Jamina Boatwright (Boatwright) who informed the officers that the man with the firearm had exited the back door of the residence. Officers proceeded to the rear of the residence where they encountered, and detained, a black male, later identified as Appellant. A search of the path Appellant took from the back door of the home yielded a .380 caliber handgun, three baggies containing suspected narcotics, $228.00 in cash and a digital scale. Appellant was arrested and charged with multiple offenses.[2]

At Appellant's preliminary hearing, Boatwright was called as a defense witness and testified that she was Appellant's former girlfriend. She further testified that on the evening of November 17, 2009, Appellant arrived at her home to retrieve some personal items and walked in on Boatwright and a new paramour. Appellant was upset at Boatwright's involvement with another man, and an altercation occurred during which the other man struck Appellant on the head with a firearm and exited the home. Boatwright testified it was the third party, not Appellant, who possessed the firearm, narcotics and paraphernalia. This testimony corroborated that of Appellant, who steadfastly denied possession of the items recovered at the scene.

Appellant's case was listed as a jury trial. Prior to trial, Count one, VUFA—persons not to possess firearms, was sev-

---

1. This is an interlocutory appeal as of right. In Pennsylvania, "a defendant is entitled to an immediate interlocutory appeal as of right from an order denying a non-frivolous motion to dismiss on state or federal double jeopardy grounds." *Commonwealth v. Delong*, 879 A.2d 234, 237 fn. 1 (Pa.Super.2005).

2. Specifically, Appellant was charged with two violations of the Uniform Firearms Act (VUFA), persons not to possess firearms (18 Pa.C.S. § 6105(a)(1)) and firearms not to be carried without a license (18 Pa.C.S. § 6106(a)(1)). In addition, Appellant was charged with three counts of possession with intent to deliver a controlled substance (35 Pa.S.A. § 780–113(a)(30)), two counts of possession of a controlled substance (35 Pa.S.A. § 780–113(a)(16)), possession of a small amount of marijuana (35 Pa.S.A. § 780–113(a)(31)), disorderly conduct (18 Pa.C.S. § 5503(a)(4)), and possession of drug paraphernalia (35 Pa.S.A. § 780–113(a)(32)).

ered from the nine remaining charges.[3] Counts two through ten[4] were presented to the jury; while Count one, VUFA— persons not to possess a firearm, was scheduled to be heard at a later date by the trial judge in a non-jury trial.

Appellant's jury trial began on September 21, 2010. In his opening statement, Appellant's counsel informed the jury that Boatwright would testify at trial to the presence of a third individual who possessed the narcotics and the firearm, thus exonerating Appellant.

In its case-in-chief, the Commonwealth called five police officers to testify as to their observations and the arrest of Appellant. The officers testified that they observed Appellant's hand and head were bandaged and he had a strong odor of alcohol about him. The Commonwealth established that Boatwright was the former girlfriend of Appellant; however, the Commonwealth did not call her to testify.

On the second day of trial, September 22, 2010, Appellant's attorney learned through Appellant that Boatwright was planning to change her testimony from that which she testified to at Appellant's preliminary hearing. Appellant's attorney advised the trial court and the Commonwealth's attorney of this development.

Appellant's attorney consulted with Boatwright directly, with the permission of the trial court, and confirmed that she was planning to change her testimony. According to Appellant's attorney, Boatwright intended to testify that there was no other man present that night; that the firearm, narcotics, paraphernalia and money were hers; and that she struck Appellant in the head with the firearm.

Complicating the issue was the fact that Appellant's attorney represented Boatwright on an unrelated assault charge. This conflict of interest was promptly remedied and attorney Randall Hetrick (Hetrick) was appointed to represent Boatwright both as a witness in Appellant's trial and on her unrelated case. A recess was taken, during which time Hetrick consulted with Boatwright regarding her Fifth Amendment rights and the possibility of charges being filed against her should her testimony change from that given under oath at Appellant's preliminary hearing or should she implicate herself in criminal activities.

The trial court reconvened in the afternoon. The Commonwealth rested its case, and Appellant's counsel called Boatwright as his first witness. An *in camera* hearing was held and the trial court advised Boatwright of her Fifth and Sixth amendment

---

**3.** Severance of certain charges is permitted under Pa.R.Crim.P. 583, which provides that "the court may order separate trials of offenses or defendants or provide other appropriate relief, if it appears that any party may be prejudiced by offenses or defendants being tried together." With respect to the charge of violating VUFA—persons not to possess firearms, 18 Pa.C.S. § 6105, the Commonwealth must introduce evidence of a prior conviction as an element of the crime. Because evidence of prior crimes is not admissible for the sole purpose of demonstrating criminal propensity, it is common practice for defense counsel to request severance of this charge from the charges presented to the jury to avoid any undue prejudice that could arise

from the jury hearing evidence pertaining to a defendant's prior conviction. *See Commonwealth v. Melendez–Rodriguez*, 856 A.2d 1278, 1283 (Pa.Super.2004); Pa.R.E. 404(b).

**4.** VUFA—firearms not to be carried without a license (18 Pa.C.S. § 6106(a)(1)), three counts of possession with intent to deliver a controlled substance (35 Pa.S.A. § 780–113(a)(30)), two counts of possession of a controlled substance (35 Pa.S.A. § 780–113(a)(16)), possession of a small amount of marijuana (35 Pa.S.A. § 780–113(a)(31)), disorderly conduct (18 Pa.C.S. § 5503(a)(4)), and possession of drug paraphernalia (35 Pa. S.A. § 780–113(a)(32)).

rights, as well as the consequences of her potential testimony. After an extensive colloquy on the record, "it was apparent to the [trial court] that [Boatwright] intended to waive her Fifth and Sixth Amendment [rights] despite the objection of her new attorney, [Hetrick.]" Trial Court Opinion, 1/4/2011, at 21.

Neither party requested a mistrial. The trial court *sua sponte* declared a mistrial as to Counts two through ten [5] "as a matter of manifest necessity." *Id.* Both the attorney for the Commonwealth and Appellant's counsel objected to the trial court's declaration of a mistrial.[6]

New counsel was appointed to represent Appellant. On October 26, 2010, Appellant filed a motion to dismiss, arguing that principles of double jeopardy barred a subsequent prosecution because "manifest necessity" did not exist to justify the trial court's declaration of a mistrial. On November 8, 2010, the trial court conducted a hearing regarding Appellant's double jeopardy challenge. Following the hearing the trial court issued an order denying Appellant's motion to dismiss holding that it declared a mistrial out of manifest necessity. The trial court noted that Count 1 was not affected by the declaration of a mistrial as that count had been previously severed and was not part of the case that was mistried. On November 15, 2010, Appellant filed his notice of appeal. Both Appellant and the trial court complied with Pa. R.A.P. 1925.

On appeal, Appellant raises the following question:

I. Did the trial court [err] in denying [Appellant's] motion to dismiss all counts in violation of double jeopardy protections after the trial court *sua sponte* declared a mistrial over the objection of both the Commonwealth and [Appellant]?

Appellant's Brief at 4.

■■■ Pennsylvania Rule of Criminal Procedure 605 states that only a defendant may move for a mistrial due to a prejudicial occurrence during trial. Pa.R.Crim.P. 605(B). Otherwise, the trial judge may declare a mistrial for reasons of manifest necessity. *Id.* Well-settled Pennsylvania law holds "the question [of] whether under the Double Jeopardy Clause there can be a new trial after a mistrial has been declared without the defendant's request or consent depends on [whether] there is a manifest necessity for the mistrial, or the ends of public justice would otherwise be defeated." *Commonwealth v. Kelly*, 797 A.2d 925, 936 (Pa.Super.2002). When a trial court declares a mistrial without manifest necessity, the Commonwealth is forbidden from retrying the defendant. *Commonwealth v. McCord*, 700 A.2d 938 (Pa.Super.1997); U.S.C.A. Const. Amend. 5; PA. Const., Article I, § 10.

The determination by a trial court to declare a mistrial after jeopardy has attached is not one to be lightly undertaken, since the defendant has a substantial interest in having his fate determined by the jury first impaneled. Additionally, failure to consider if there are less drastic alternatives to a mistrial creates doubt about the propriety of the exercise of the trial judge's discretion and is grounds for barring retrial because it indicates that the court failed

---

5. The record reflects that Count 9, disorderly conduct, was dismissed prior to the declaration of a mistrial, upon Appellant's motion for judgment of acquittal. Order, 9/22/2010.

6. Although Appellant's attorney advised him not to proceed with trial in light of the developments involving Boatwright's testimony, Appellant's attorney objected to the mistrial on the record at the express request of Appellant. Trial Court Opinion, 1/4/2011, at 21.

to properly consider the defendant's significant interest in whether or not to take the case from the jury. Finally, it is well established that any doubt relative to the existence of manifest necessity should be resolved in favor of the defendant.

*Commonwealth v. Diehl*, 532 Pa. 214, 615 A.2d 690, 691 (1992).

■ In accordance with our scope of review, we must take into consideration all the circumstances when passing upon the propriety of a declaration of mistrial by the trial court. *Id.* Absent an abuse of that discretion, we will not disturb the court's decision. *Commonwealth v. Hoovler*, 880 A.2d 1258, 1260 (Pa.Super.2005).

■ Appellant argues that the issues presented related to Boatwright's proposed testimony did not make a mistrial a manifest necessity. Appellant's Brief at 11. We agree.

In its opinion, the trial court states

[t]he troubling aspect of the developments on the second day of the jury trial for the trial court in this matter were that defense counsel was now placed into a very tight box by a witness whose eleventh hour surprise decision to take responsibility and confess (as in some old Perry Mason episode) that she possessed the gun, drugs and scale and that she had struck appellant on the head with the pistol and that he never possessed any of these items. Obviously, defense counsel who had told the jury in his opening statement that she would testify that there was a third individual who possessed these items and who assaulted appellant, would now have lost all credibility with the jury and had to change the entire theory of his case. That theory would now rest upon a witness, [Boatwright], who would be confessing in their presence to doing what

[Appellant] was accused of doing, plus she would be admitting that she had previously lied under oath in this case as well as to the police by falsely accusing another individual of a crime and failing to tell the whole truth. Defense counsel would also have the ethical dilemma of not assisting a person in committing perjury while she testified on his client's behalf as well as the additional problem of not being permitted to argue perjured testimony to the jury. Since defense counsel would not know which under oath testimony was truthful, it would be difficult for him to choose ethically whether or not he could argue either version of [Boatwright's testimony] to the jury.

Furthermore, [Boatwright's] testimony at [Appellant's] preliminary hearing was not preserved by a transcript or tape recording. Defense counsel, therefore, might have to testify at appellant's trial as to what the testimony was if [Boatwright] didn't recall or if she denied that she accused a third person or denied involvement with the gun and drugs at the preliminary hearing. This scenario could arise because the Commonwealth would impeach her testimony at [Appellant's] trial with her prior testimony. Alternatively, in an attempt to soften the impact of prior inconsistent testimony, defense counsel might try to elicit those inconsistencies from her in direct examination.

In short, [Boatwright] and [Appellant] (who planned to testify at the trial also), would appear to have contrived their testimony in an attempt to contravene or contradict the testimony of one officer who claims he saw [Appellant] drop something in the area where they found the gun, drugs and paraphernalia. Given their past romantic relationship, and the possibility that [Boatwright], [Appellant] or some other witness would be

able to prove that they communicated between the time of the preliminary hearing and the trial, would create at least the appearance that they had synthesized their version of what occurred that night. Defense counsel could not win this case having made the opening statement based upon prior testimony that was going to be recanted by his chief defense witness. He obviously lost all credibility with the jury. It would be a different story, had defense counsel not argued this as his prime defense theory in his opening statement but now, having been boxed in by the eleventh hour surprise change in testimony, and the ethical dilemma of not potentially being able to aid the witness in her testimony since it could well be perjured testimony and/or arguing her [perjured] testimony to the jury, defense counsel had his entire defense undercut by his own witness. While this does occur in other cases, the compromises and conflicts existing in this case were insurmountable.

Trial Court Opinion, 11/4/2011, at 21–23.

It may well be that Appellant's counsel's trial strategy was compromised by Boatwright's sudden change of heart; however, we conclude that no manifest necessity existed to require a mistrial. Boatwright's changed testimony still supports Appellant's theory of the case: that he was not personally in possession of the firearm, narcotics or paraphernalia found at the scene. The fact that Boatwright and Appellant were romantically involved prior to this incident is always a factor that affects Boatwright's motive and credibility and would have to be considered by the jury accordingly.

Moreover, we are convinced that less severe remedies than a mistrial existed in this case at the time the mistrial was declared. The record is absolutely devoid of any indication that the trial court considered any less drastic measures. The trial court declared a mistrial before the jury was permitted to hear **any** of the defense case, based on its perception that Appellant's attorney was "boxed in" in light of Boatwright's anticipated testimony. Trial Court Opinion, 1/4/2011, at 22.

Perhaps most telling, not only did Appellant not move for a mistrial, he declined the court's invitation to do so. In our view, Appellant's willingness to proceed, at his potential detriment and after having been fully informed by counsel the implication and benefits of a mistrial, results in a waiver of the issue on appeal. *See Commonwealth v. Montalvo*, 434 Pa.Super. 14, 641 A.2d 1176, 1188 (1994) (If a defendant fails to move for a mistrial contemporaneously with the allegedly prejudicial incident at trial, "any potential claim is waived and the defendant is entitled to relief only if the trial judge finds a new trial to be a 'manifest necessity.' ")

We venture to say that the issue of a defense witness testifying unfavorably is a common hurdle faced by the defense attorneys of this Commonwealth and we are hard-pressed to believe that each instance of unfavorable testimony does, or should, result in a mistrial. Because the law requires **any** doubt as to the propriety of the mistrial to be resolved in favor of the defendant, we must conclude that based on the record, the trial court declared a mistrial prematurely and improperly. Thus, we do not believe there has been a showing of manifest necessity, and thus the retrial of Appellant would be constitutionally infirm. Accordingly, we also conclude that the trial court abused its discretion subsequently when it denied Appellant's motion to dismiss Counts two through ten on double jeopardy grounds. We note that our decision does not affect Count 1

as that charge was not part of the jury trial.

Order reversed.   Jurisdiction relinquished.