J-S21035-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
VERNON WAYNE KING :
:
Appellant : No. 1710 MDA 2022

Appeal from the PCRA Order Entered December 14, 2022
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s): CP-22-CR-0004017-2017

BEFORE: BOWES, J., NICHOLS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.: **FILED: AUGUST 7, 2023**

Vernon Wayne King (King) appeals from the order of the Court of
Common Pleas of Dauphin County (PCRA court) dismissing his first petition
for relief filed under the Post-Conviction Relief Act (PCRA), 42 Pa.C.S.
§§ 9541-9546. After review, we affirm.

## I.

## A.

In the early morning hours of February 16, 2016, Frankie Whitlock was
shot and killed in Harrisburg. Police arrested King and another man, Kurt
Tasker (Tasker), and charged both with murder, conspiracy to commit
murder, persons not to possess firearms and carrying firearms without a

_____

[*] Retired Senior Judge assigned to the Superior Court.

license.[1] In February 2019, the defendants were tried together at a simultaneous jury and bench trial where the jury served as the factfinder for the murder, conspiracy and carrying without a license charges, and the trial court served as the factfinder for the persons not to possess charge.[2] At the end of the jury portion of trial, the jury found Tasker not guilty of all charges while finding King guilty only of carrying without a license.

After the jury was dismissed, the trial court conducted a colloquy with Tasker about waiving his right to a jury trial on his persons not to possess charge. The trial court, however, did not colloquy King, instead relying on his trial counsel's representation that he still wished to have a bench trial on the persons not to possess charge. After the trial court accepted the waiver, both defendants' attorneys stipulated to the prior convictions and offered no further argument. The trial court followed the jury's verdict and found Tasker not guilty of persons not to possess but convicted King of the offense.

The trial court sentenced King to five to ten years' imprisonment for persons not to possess and a consecutive five years of probation for carrying

_____

[1] 18 Pa.C.S. §§ 2502(a), 903(a), 6105(a) and 6106(a).

[2] As we have recognized, "[b]ecause evidence of prior crimes is not admissible for the sole purpose of demonstrating criminal propensity, it is common practice for defense counsel to request severance of [persons not to possess, 18 Pa.C.S. § 6105] from the charges presented to the jury to avoid any undue prejudice that could arise from the jury hearing evidence pertaining to a defendant's prior conviction." **Commonwealth v. Cobb**, 28 A.3d 930, 932-33 n.3 (Pa. Super. 2011) (citation omitted).

without a license.[3]  After sentencing, King filed a post-sentence motion challenging the sufficiency and weight of the evidence.  When that motion was denied, King filed a direct appeal to this Court.  We affirmed the judgment of sentence, and the Supreme Court of Pennsylvania denied his petition for allowance of appeal.  *See Commonwealth v. King*, 251 A.3d 1266, 2021 WL 1157989 (Pa. Super. 2021) (unpublished memorandum), *appeal denied*, 263 A.3d 553 (Pa. 2021).

**B.**

On February 3, 2022, King filed a timely *pro se* PCRA petition alleging that his trial counsel, Attorney Lonny Fish (Attorney Fish), was ineffective for not ensuring that the trial court colloquied him about waiving his right to a jury trial for his persons not to possess charge.  PCRA counsel was appointed and filed a supplemental petition asserting that the trial court violated Pennsylvania Rule of Criminal Procedure 620 by failing to colloquy King, and that King would have requested a jury trial on his persons not to possess charge if the trial court had colloquied him.

---

[3] Because King had a prior record score of five and persons not to possess had an offense gravity score of ten, his standard range guidelines for the offense were 60-72 months.  *See* 204 Pa. Code § 303.16(a) (basic sentencing matrix). Additionally, because the offense is a second-degree felony that carries a maximum punishment of 10 years, *see* 18 Pa.C.S. § 1103(2), his minimum sentence for persons not to possess could not exceed 60 months.  *See* 42 Pa.C.S. § 9756(b)(1) (a sentencing court cannot impose a minimum sentence of confinement exceeding one-half of the maximum sentence imposed).

At the evidentiary hearing, Attorney Fish was asked about the lack of an on-the-record colloquy of King. Attorney Fish testified that he was surprised there was none but added that he did not think one was necessary because they had just had a jury trial on the other charges. When asked if he ever discussed the waiver with King, Attorney Fish testified that he did but clarified that he did so as part of a collective discussion with Tasker and his attorney about having the persons not to possess charges bifurcated so that the jury would not learn about their prior convictions. He added that King never expressed a desire to him about taking the persons not to possess charge to a jury trial. King, meanwhile, testified that Attorney Fish never fully discussed with him the reasons for having a bench trial on the persons not to possess charge and claimed that he would have asked for a jury trial if he had been colloquied.

After the hearing, the PCRA court dismissed King's ineffectiveness claim, finding that King voluntarily and knowing waived his right to a jury trial on the persons to possess charge. In so doing, the trial court first acknowledged that there was neither a written waiver colloquy nor fully-developed oral colloquy on the record. Even still, the PCRA court noted, King was present when his co-defendant Tasker was colloquied and Attorney Fish informed the trial court that they were still asking for a bench trial on the persons not to possess charge. **See** PCRA Court Opinion (PCO), 12/14/22, at 5-6. The PCRA court also found that all the relevant circumstances surrounding King's waiver

- 4 -

indicated that it was knowing and voluntary. On this point, the PCRA court

credited Attorney Fish's testimony over that of King's on the issue of waiver.

> Regarding the waiver of the jury trial on the bifurcated charge, Attorney Fish testified that the decision was made prior to the start of trial. He further stated that he did not believe a full written colloquy was necessary as the [King] had just gone through a jury trial. [King] was present and took part in the selection of the jury, as well as the entire process of questioning witnesses and presenting evidence. Additionally, Attorney Fish testified that he had several conversations with his client, as well as his co-defendant Kurt Tasker and his counsel, Attorney Walk, regarding the waiver issue. He did not recall [King] ever asking him to request a jury trial on the bifurcated charge.
>
> [King] testified that he understood Attorney Fish's position regarding waiver. However, he also testified that Attorney Fish did not fully discuss the waiver issue with him, and if he did, he would have requested a jury trial on the bifurcated charge. [King] did not have a specific recollection of what occurred in court immediately following the jury verdict and did not realize that he did not receive a full colloquy until reading the transcript. This Court finds Attorney Fish more credible than his client on this issue.

*Id.* at 7-8.

After dismissal of his petition, King filed this appeal to challenge the

PCRA court's dismissal of his ineffectiveness claim.[4]

## II.

We begin with some general principles that guide our consideration.

> To be eligible for PCRA relief, a petitioner must prove by a preponderance of the evidence that his conviction or sentence

---

[4] "The standard of review of an order dismissing a PCRA petition is whether that determination is supported by the evidence of record and is free of legal error." *Commonwealth v. Cruz*, 223 A.3d 274, 277 (Pa. Super. 2019).

resulted from one or more of the enumerated circumstances found at 42 Pa.C.S. § 9543(a)(2) (delineating the eligibility requirements of the PCRA). A petitioner also must demonstrate that the issues raised in his PCRA petition have not been previously litigated or waived. *Id.* § 9543(a)(3).

\* \* \*

... It is well-settled that counsel is presumed to have been effective and that the petitioner bears the burden of proving counsel's alleged ineffectiveness. *Commonwealth v. Cooper,* 596 Pa. 119, 941 A.2d 655, 664 (2007). To overcome this presumption, a petitioner must establish that: (1) the underlying substantive claim has arguable merit; (2) counsel did not have a reasonable basis for his or her act or omission; and (3) the petitioner suffered prejudice as a result of counsel's deficient performance, "that is, a reasonable probability that but for counsel's act or omission, the outcome of the proceeding would have been different." *Id.* A PCRA petitioner must address each of these prongs on appeal. *See Commonwealth v. Natividad,* 595 Pa. 188, 938 A.2d 310, 322 (Pa. 2007) (explaining that "appellants continue to bear the burden of pleading and proving each of the [ineffective assistance of counsel] elements on appeal to this Court"). A petitioner's failure to satisfy any prong of this test is fatal to the claim. *Cooper*, 941 A.2d at 664.

When [an appellate c]ourt reviews an order dismissing or denying a PCRA petition, its standard of review is whether the findings of the PCRA court are supported by the record and are free from legal error. "The PCRA court's credibility determinations, when supported by the record, are binding on this Court[.]" *Commonwealth v. Mason*, 634 Pa. 359, 130 A.3d 601, 617 (2015) (quoting *Commonwealth v. Roney*, 622 Pa. 1, 79 A.3d 595, 603 (2013)). "Appellant has the burden to persuade this Court that the PCRA court erred and that such error requires relief." *Commonwealth v. Wholaver*, 644 Pa. 386, 177 A.3d 136, 144-45 (2018).

*Commonwealth v. Reid*, 259 A.3d 395, 405-06 (Pa. 2021).

We also note that we are reviewing an ineffectiveness claim related to an alleged involuntary waiver of a defendant's jury trial rights. As our Supreme Court has explained:

> The right to trial by jury is enshrined in both the U.S. and Pennsylvania Constitutions. *See* U.S. CONST. amend. VI; PA. CONST. art. I, § 6. The importance of the right is recognized by the procedural protections in Rule 620 of this Court's Criminal Procedural Rules, which provides that:
>
>> In all cases, the defendant and the attorney for the Commonwealth may waive a jury trial with approval by a judge of the court in which the case is pending, and elect to have the judge try the case without a jury. The judge shall ascertain from the defendant whether this is a knowing and intelligent waiver, and such colloquy shall appear on the record. The waiver shall be in writing, made a part of the record, and signed by the defendant, the attorney for the Commonwealth, the judge, and the defendant's attorney as a witness.
>
> Pa.R.Crim.P. 620. ...
>
> The essential elements of a jury waiver, though important and necessary to an appreciation of the right, are nevertheless simple to state and easy to understand. "The essential ingredients, basic to the concept of a jury trial, are the requirements that the jury be chosen from members of the community (a jury of one's peers), that the verdict be unanimous, and that the accused be allowed to participate in the selection of the jury panel." *Commonwealth v. Williams*, 454 Pa. 368, 312 A.2d 597, 600 (Pa. 1973); *accord Commonwealth v. Smith*, 498 Pa. 661, 450 A.2d 973, 974 (Pa. 1982). Notwithstanding the Rule's reference to a "colloquy on the record," the use of a written jury trial waiver form has been deemed sufficient in the absence of an oral jury trial waiver colloquy. *Williams*, 312 A.2d at 599-600.

*Commonwealth v. Mallory*, 941 A.2d 686, 696-97 (Pa. 2008) (footnote and brackets omitted).

Yet as the Supreme Court has also explained, "the mere absence of a record oral waiver colloquy does not automatically prove that a right was relinquished unknowingly or involuntarily and that the trial lawyer was ineffective for causing the waiver." *Id.* at 698. Rather, the Court opined:

> When a presumptively-valid waiver is collaterally attacked under the guise of ineffectiveness of counsel, it must be analyzed like any other ineffectiveness claim. Such an inquiry is not resolved by the mere absence of an oral waiver colloquy; instead, the analysis must focus on the totality of relevant circumstances. Those circumstances include the defendant's knowledge of and experience with jury trials, his explicit written waiver (if any), and the content of relevant off-the-record discussions counsel had with his client.

*Mallory*, 941 A.2d at 698 (internal citations omitted).

### III.

### A.

We begin with the first prong of the ineffectiveness test: whether there is arguable merit to King's claim that he did not voluntarily and knowingly waive his right to a jury trial on his persons not to possess charge. On appeal, he emphasizes that the trial court failed to conduct a colloquy with him about waiving his right to a jury trial on the persons not to possess charge.

At the outset, we agree that the trial court violated Rule 620 by failing to have King complete a written colloquy or conduct an on-the-record oral colloquy with him to ensure he was knowingly and voluntarily waiving his right to a jury trial. Instead, as the record shows, the trial court colloquied Tasker about the waiver but failed to do the same with King, relying instead on his

trial counsel's statement that King wished to waive his right to a jury trial.

The relevant exchange reads as follows:

> THE COURT:  … All right.  As it stands at this point, the jury has returned its verdict.
>
> And, essentially, Mr. Tasker, on the three counts that were before the jury, they found you not guilty.
>
> And, Mr. King, on the counts in front of you, they found you not guilty of the homicide and conspiracy, but guilty of firearms not to be carried without a license.
>
> There's one remaining charge that has not been resolved, and that is the charge of persons not to possess a firearm, because that would have required the jury to hear the evidence that would have disqualified you, which would have been reference to your prior record, as I understand there must be one out there.
>
> What is your desire in this particular case as far as proceeding?  Waiving that right to a jury?
>
> ATTORNEY FISH:  Yes, we waive the right to a jury trial.  We'll plead not guilty.  If Your Honor wants to do an additional colloquy, that's fine too.
>
> THE COURT:  All right.  Well, here's what I intend to do.  Mr. Tasker, in this case the jury found you not guilty of possessing the firearm.  Is the Commonwealth seeking a bench trial on the remaining count of person not to possess a firearm?
>
> ATTORNEY FALBO:  Yes, Your Honor.
>
> THE COURT:  All right.  Then you understand, obviously, your right to a jury trial.
>
> DEFENDANT TASKER:  Yes.
>
> THE COURT:  You've just gone through a jury trial.  You understand how it works.  You would have a right, actually, to have another jury selected, and we can try the case on that particular matter, or you can give that up and be tried by the judge, where I've already listened to the case.  I would be able to

hear the evidence presented in this case and render a verdict accordingly. Have you had a chance to discuss whether you wish to waive your right to jury trial and proceed with a trial by judge, Mr. Tasker?

ATTORNEY WALK: We have discussed that, Your Honor. We'll proceed with a judge trial.

ATTORNEY FISH: Yes. And, Judge, with Mr. King, the understanding is similar, that we'd just bring this jury back. It wouldn't be another week. And he's still waiving his right to a jury trial. We understand what's gonna happen.

THE COURT: Okay.

ATTORNEY FISH: So I just don't want any -- later, down the line, oh, say, I could have picked another jury.

THE COURT: All right.

ATTORNEY FISH: We gave the word that they wouldn't be brought back in.

THE COURT: Well, they're still downstairs –

ATTORNEY FISH: So we agreed –

THE COURT: -- so we could bring them up, and I'd have to break it to them that they're –

ATTORNEY FISH: -- their verdict and my word, and that's it. So we'll stand by it.

THE COURT: All right. We'll accept the waiver of the jury trial. …

Notes of Testimony (N.T.), Trial Transcript at 1121-23.

That the trial court failed to properly colloquy King about the waiver does not mean that the waiver was not voluntary or knowing, however. When a presumptively-valid waiver is challenged on collateral review in the context of an ineffectiveness claim, the PCRA court must look at the totality of relevant

- 10 -

circumstances in determining whether the waiver was involuntary or unknowing. ***See Mallory***, ***supra***. Here, King asserts that there is nothing in the record showing that Attorney Fish discussed the waiver with King. ***See*** King's Brief at 22-23. After review, however, we cannot agree.

First, before trial began, Attorney Fish informed the trial court that they were asking to bifurcate and have a bench trial on the persons not to possess charge after the jury rendered its verdict.

> THE COURT: …We're talking about the one person not to possess. The workable alternative is a stipulation of counsel that he is not legally permitted to possess. That goes out as a determination and there's no need then for them to know why. The other option is to bifurcate, and then we'll have fun with that with the jury, assuming when we finish up this trial –
>
> ATTORNEY FISH: Right. About –
>
> THE COURT: -- we go into the bifurcated portion.
>
> ATTORNEY FISH: What I've -- what I've done in practice is two things, is, if the jury comes back guilty, we'll do a waiver colloquy and nonjury trial, and Your Honor will do what Your Honor does and find him guilty afterwards; or, in the alternative they would just go back and be read that separate charge if they are found not guilty afterwards, is what I would request.
>
> THE COURT: All right.
>
> ATTORNEY FISH: One or the other. So I can assure you that if the jury does come back guilty, I'll explain to my client, we'll just do a waiver trial for that one charge afterwards, before the jury's released.

N.T., Trial Transcript at 102-03.

At the evidentiary hearing, PCRA counsel tried to establish that King was not present in the courtroom when Attorney Fish requested that the persons

- 11 -

not to possess charge be bifurcated and tried at a bench trial after the verdict. The record, however, reflects that King and Tasker were both present when the matter was discussed before trial, as the Commonwealth noted that they were both present. *Id.* at 83. Additionally, at the evidentiary hearing, the PCRA court rebutted King's suggestion that he was not present for Attorney Fish's pretrial statement that they wished to have the persons not to possess charge severed and tried at a bench trial after the verdict, stating:

> The Court has a very clear recollection that [the defendants] were all present in the courtroom. When they're not in, that means they're usually down in a break with the sheriffs.
>
> We don't do anything on the record without them being present unless there's a decision to do it without them and when they come back we make a note that they were absent during that part.
>
> When that discussion went down, both counsel, both defendants, the DA were all present during those discussions. He was clearly there, not that he verbalized anything or defer to his attorney.
>
> At no time did I see any facial recognitions indicating any disagreement, surprise, or confusion. He seemed to be very pleased with what his attorney accomplished at that point. That's the recollection of the Court. …

N.T., PCRA Hearing at 47-48. Thus, before trial began, King heard his attorney inform the trial court that he intended to have a bench trial on the persons not to possess charge after the jury rendered its verdict on the other charges.

Second, contrary to King's assertion that his attorney never discussed the waiver with him, Attorney Fish testified at the evidentiary hearing that they discussed having the persons not to possess charge bifurcated and tried

at a bench trial. Relevantly, the Commonwealth asked the following during its examination of Attorney Fish.

> Q. What I'm getting at here is, any conversations that you and the defendant had before trial or not during the trial, so something that's not of the record here, did you ever discuss this, just you and your defendant, whether to take a jury trial on that charge?
>
> A. I got to be honest, that discussion was four-way between me, [Tasker's attorney, Tasker, and King]. That was a four-way discussion at the table. That wasn't a two one-on-one. It was a four-way discussion that we didn't want it to come in. I remember that it was -- we were very collaborative with [Tasker's attorney].
>
> Q. Not to cut you off, but did you or anyone, being you and Mr. Walk, advise the defendant that he could take a jury trial on that charge?
>
> A. **That was the discussion to waive it**. So I guess that would be a conscious positive. I don't think I remember specifically saying you can do it like you would in a colloquy.
>
> **But we were discussing waiving the jury for that reason**. Like, I don't remember the exact words that were used, but I remember this was around the time we wanted to make sure the conviction didn't come in for the jury to hear it.
>
> * * *
>
> Q. Did [King] ever express the desire to take that persons not to possess to trial by jury?
>
> A. I think what happens is you bring in the same jury. That's my recollection. I didn't – that was never expressed to me.
>
> Q. He never said, "I want a jury trial on the person not to possess?"
>
> A. I mean, no. But, I mean, **I was advising him of how we were doing things, too**. …

*Id.* at 25-26, 27 (emphasis added).

As noted, we are bound by the PCRA court's credibility determinations, as long as they are supported by record evidence. ***See Mason***, ***supra***. Here, the PCRA court credited Attorney Fish's testimony about the waiver over King's testimony that they did not discuss waiver. ***See*** PCO at 7-8. While Attorney Fish admits that the discussion was a collective one with Tasker and his attorney, his testimony nonetheless shows that the waiver was discussed before trial, and that Attorney Fish was advising of him of how they "were doing things."

Third, and as the PCRA court noted, King's claim that his waiver was not voluntary and knowing is belied by him going through a jury trial—from jury selection to verdict—on the other charges. Indeed, in illustrating under what circumstances a defendant could still make voluntary and knowing waiver in the absence of an on-the-record colloquy, the ***Mallory*** Court offered "a career criminal defendant with previous, first-hand experience with jury trials." ***Mallory***, ***supra*** at 697. Here, King would meet both criteria because he had a prior record score of five and, as the PCRA court observed, "was present and took part in the selection of the jury, as well the entire process of questioning witnesses and presenting evidence." PCO at 7. This, along with the other relevant circumstances, support the PCRA court's conclusion that even in the absence of an on-the-record colloquy, King's request to waive his right to a jury trial on the persons not to possess charge was knowing and voluntary.

**B.**

However, even if King established that his claim had arguable merit and Attorney Fish lacked a reasonable basis for waiving King's right to a jury trial on the persons not to possess charge (which we need not address), we would still conclude that he failed to establish that he was prejudiced by the waiver.

In *Mallory*, our Supreme Court addressed what a petitioner must show to establish that he was prejudiced in the context of an ineffectiveness claim challenging his waiver of his jury trial rights.

> [W]e hold that when a defendant seeks to collaterally attack his waiver of a jury trial, on grounds that it was caused by the ineffective assistance of his trial counsel, to prove prejudice, he must demonstrate a reasonable probability that but for counsel's constitutionally deficient service, the outcome of the waiver proceeding would have been different, *i.e.,* that he would not have waived his right to a jury trial.

*Mallory*, *supra* at 704.

King contends that he established the prejudice element at the evidentiary hearing through his testimony that he would have asked for a jury trial on the persons not to possess charge if he had been properly colloquied. To that end, he essentially asks us to credit his testimony that he would have asked for a jury trial because his testimony on this point was uncontested.

This argument, however, ignores that the PCRA court, as the factfinder, assesses the credibility of the testimony that it hears, and that it did not need to credit his testimony on this point because it was uncontested. In any event, we do not necessarily agree that his testimony on this point was uncontested.

As discussed, Attorney Fish testified that King never expressed a desire to him that he wanted to have the jury return after it rendered its verdict on the other charges and render another verdict on the persons not to possess charge as well. *See* N.T., PCRA Hearing at 27. Moreover, the PCRA court credited Attorney Fish's testimony about the waiver over King's testimony that he did not realize what happened after the verdict when Attorney Fish asked for a bench trial on the remaining persons not to possess charge. *See* PCO at 7-8.

Again, as we are bound by the PCRA court's credibility determination supported by the record, we need not credit King's self-serving testimony that he would have asked for the same jury that just found him guilty of carrying without a license to also serve as the factfinder on his persons not to possess charge, even though the latter offense would have required only that the Commonwealth show that he possessed a firearm and had a prior disqualifying conviction.[5] Accordingly, even if King had established the first two prongs of

---

[5] King faults Attorney Fish several times in his brief for not seeking severance and a second, separate jury trial on the persons not to possess charge. We note, however, that King did not raise this argument in either his petition or at the evidentiary hearing. Indeed, rather than filing an amended petition adding a claim that Attorney Fish was ineffective for not seeking a separate jury trial on the persons not to possess charge, PCRA counsel merely supplemented King's *pro se* petition to expand on his ineffectiveness claim related to the trial court's failure to properly colloquy King under Rule of Criminal Procedure 620. Accordingly, to the extent that King now faults Attorney Fish for not having a separate jury trial on the persons not to possess charge, his argument is waived. "Issues not raised in the [PCRA] court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a); *Mason*, *supra* at 635 (stating failure to include issue in PCRA petition or in court-approved amendment to petition constitutes waiver).

ineffectiveness, he still failed to demonstrate that there was a reasonable probability that he would not have waived his right to a jury trial.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/7/2023