J-A09005-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ELIJAH J. PRICE | : | |
| | : | |
| Appellant | : | No. 392 WDA 2023 |

Appeal from the Judgment of Sentence Entered February 15, 2023
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0013886-2018

BEFORE: DUBOW, J., KUNSELMAN, J., and NICHOLS, J.

MEMORANDUM BY DUBOW, J.:                    **FILED: MAY 15, 2024**

Appellant, Elijah J. Price, appeals from the Judgment of Sentence entered on February 15, 2023, in the Court of Common Pleas of Allegheny County after a jury convicted him of First-Degree Murder and Robbery.[1] Appellant challenges the trial court's *sua sponte* declaration of a mistrial at his prior trial and the denial of his pretrial motions to suppress evidence. After careful review, we affirm.

**A.**

We glean the following relevant factual and procedural history from the trial court opinion. On January 27, 2018, at 9:59 p.m., McKeesport police officers responded to a report of gunshots and found Craig Rhodes-Mitchell ("Decedent") shot to death in his apartment. Police investigations revealed

---

[1] 18 Pa.C.S. §§ 2502(a) and 3701(a)(1)(i), respectively. The Commonwealth withdrew one count of Recklessly Endangering Another Person prior to trial.

that Decedent's cell phone had 15 text messages and phone calls between him and "E.P." between 12:48 p.m. and 9:50 p.m. that day. The messages indicated that E.P. had planned to buy marijuana from Decedent that night.

On February 2, 2018, at 4:00 p.m., Officer Ryan Johnston and Lieutenant Richard Buehrle of the Lincoln Borough Police Department were on routine patrol when they began to follow a Dodge sedan driven by Appellant. Appellant accelerated, abruptly stopped to allow a passenger to exit, and then drove away at a high rate of speed. The officers pursued Appellant but eventually abandoned the pursuit due to safety concerns. They later found the sedan unoccupied and followed footprints in the snow which led them to Appellant, who was "hiding over a hillside." Trial Ct. Op., 8/17/23, at 8. Police arrested Appellant, and when searching him incident to arrest, they found a cell phone with a number matching E.P.'s number in Decedent's phone.

The officers ultimately transferred Appellant to the Allegheny County detectives who were investigating Decedent's murder. The detectives obtained a warrant for the contents of Appellant's phone.

On September 18, 2018, the Commonwealth charged Appellant with Decedent's robbery and murder. Prior to trial, Appellant filed an omnibus pre-trial motion seeking, *inter alia*, suppression of the contents of his cell phone. Following hearings, the court denied suppression on February 4, 2020. Appellant proceeded to a jury trial. On August 11, 2021, the trial ended in a mistrial due to a hung jury.

Appellant proceeded to a second jury trial on February 23, 2022. During his opening statement, Appellant's counsel, Ryan Tutera, Esq., made three comments that the trial court found improper:

> This is not the first time we are dealing with this matter. This is a case that happened in 2018. I want to say this and this is important. Four years have gone by. **Two trials, the second trial, numerous questions, numerous evidentiary hearings, issues raised, and not one new shard of evidence has ever come to light that say, oh, here now.** It's [Appellant], and this is how we're going to corroborate this position or this notion that he has. Four years and we're here with the same incomplete story that the Commonwealth is going to give to you and expect you to find someone guilty of the most serious offense.

> **\*\*\***

> I want to give you one last sort of how I view reasonable doubt. Car accident cases when we're talking about money, dollar judgments — money you can get back. . . . Money cases, accident cases, slip and fall, we call that preponderance of the evidence. It's a very low standard. It's the scale of justice and a feather dropping on one side and tipping ever so slightly the scales. That's what the moving party in a car accident case has to do.

> . . . .in the Family Division they deal with things such as taking people's children away from them, terminating parental rights. . . .It's taking your biological children away from you. They have to meet the standard of clear and convincing evidence.

> **Here to take somebody's liberty, their freedom, their rights to be free away from them is higher than taking one's child away from them, and that standard is called beyond a reasonable doubt.**

> **\*\*\***

> Please follow the rules that the Judge laid out for you. At the moment you find yourself not being able to follow these rules, making judgment calls such and so forth, discussing with your

- 3 -

fellow juror — **the moment that that happens before the judge gives you the case, please excuse yourself**.

**\*\*\*\***

N.T. Trial, 2/23/22, at 58-59, 61-62, 63 (emphasis added). Following opening statements, the court called the attorneys to sidebar, initially due to Attorney Tutera's third comment. While at sidebar, the Assistant District Attorney also called the court's attention to the first two comments. The court considered curative instructions but, upon reviewing the transcript, determined that instructions would not cure the cumulative prejudice caused by the comments. The court then *sua sponte* declared a mistrial.

Appellant proceeded to a third jury trial in November 2022. Prior to trial, Appellant filed a motion to dismiss all charges on double jeopardy grounds, which the court denied.[2] On November 21, 2022, the jury convicted Appellant of both charges. On February 15, 2023, the court sentenced Appellant to a term of 40 years to life in prison for First-Degree Murder and a consecutive term of 60 to 120 months' incarceration for Robbery. Appellant filed a timely post-sentence motion, which the trial court denied on March 20, 2023.

_____

[2] Appellant attempted to appeal this decision as an interlocutory appeal, but a motions panel of this Court denied his petition for review. **See** Order, 25 WDM 2022 (Pa. Super. Aug. 8, 2022).

**B.**

This timely appeal followed. Both Appellant and the trial court complied with Pa.R.A.P. 1925. Appellant raises the following issues for our review:

1. Whether the court below abused its discretion in declaring a mistrial due to defense counsel's opening statement, where manifest necessity did not exist, as cautionary instructions would have cured any prejudice?

2. Whether the court below erred in denying the motion to suppress evidence obtained from Appellant's cell phone?

Appellant's Br. at 9.

**C.**

Appellant first challenges the trial court's discretion in granting a mistrial *sua sponte*. Appellant's Br. at 13. It is well-settled that "[i]t is within a trial judge's discretion to declare a mistrial *sua sponte* upon the showing of manifest necessity," and we review that decision for an abuse of discretion. ***Commonwealth v. Kelly***, 797 A.2d 925, 936 (Pa. Super. 2002). An abuse of discretion is "not merely an error of judgment[;]" rather it occurs where "the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence or the record." ***Commonwealth v. Randolph***, 873 A.2d 1277, 1281 (Pa. 2005) (citation omitted).

The trial court's ability to grant a mistrial *sua sponte* "serves to eliminate [any] prejudicial element and foster a just judgment." ***Kelly***, 797 A.2d at 939 n.3. There is no "mechanical formula" to determine whether manifest

- 5 -

necessity exists to declare a mistrial. *Id.* at 937. Rather, due to the "varying and often unique situations" present in a trial, the trial judge is in the best position to determine how "the conduct of parties affects a trial's fact-finder." *Id. (citation omitted)*; *see, e.g., Arizona v. Washington*, 434 U.S. 497, 512-16 (1978) (affirming a *sua sponte* declaration of mistrial where defense counsel referenced prior prosecutorial misconduct during his opening statement, and the trial court adequately set forth its reasoning).

If manifest necessity exists, the Commonwealth may retry the defendant following a mistrial without implicating double jeopardy. *Kelly*, 797 A.2d at 936. However, "[w]hen a trial court declares a mistrial without manifest necessity, the Commonwealth is forbidden from retrying the defendant." *Commonwealth v. Cobb*, 28 A.3d 930, 933 (Pa. 2011). A trial court's "failure to consider if there are less drastic alternatives to a mistrial . . . is grounds for barring retrial[.]" *Commonwealth v. Walker*, 954 A.2d 1249, 1254 (Pa. Super. 2008) (citation omitted).

\*

In the instant case, the trial court granted a mistrial after it determined that Attorney Tutera's three comments "flagrantly violated" the purpose of opening statements and that their "cumulative effect" rendered curative instructions useless. Trial Ct. Op. at 4, 7. Specifically, it found that the first comment, which referenced Appellant's first trial and stated that there was no new evidence, invited the jury to base its verdict on the fact that Appellant was not convicted at his first trial. The court found that the second comment,

which referenced taking away a defendant's liberty, improperly invited the jury to consider punishment when determining guilt. Third, the court determined that the third comment, which suggested that the jurors could excuse themselves from the jury, was legally incorrect and contradicted the court's instructions. *Id.* at 5-6. Finally, it opined that curative instructions would reflect poorly on Appellant's counsel and would call attention to the prior trial. *Id.* at 7. The court therefore concluded that there was manifest necessity to declare a mistrial. *Id.*

Appellant asserts that the trial court abused its discretion in declaring a mistrial because Attorney Tutera's comments did not support the court's finding of manifest necessity, and the prejudice caused by the comments could have been remedied with curative instructions. Appellant's Br. at 14-15, 30. Specifically, Appellant argues that counsel's reference to his prior trial in the first comment does not necessarily indicate that he was not convicted. *Id.* at 20. He further maintains that Attorney Tutera did not reference incarceration in his second comment, and a competent juror would know that liberty was at stake in a criminal trial. *Id.* at 22-23. Appellant concedes that the third comment, suggesting that the jurors could "excuse" themselves from the jury was "ill-advised[,]" but he contends that, contrary to the trial court's interpretation, Attorney Tutera intended to tell the jury to follow the court's instructions, not to disregard them. *Id.* at 24, 27. He concludes that the Commonwealth violated double jeopardy by retrying him because there had

not been manifest necessity to declare a mistrial due to counsel's three comments. *Id.* at 30.

Appellant cites several cases where the court exercised its discretion based on facts distinguishable from the instant case. Appellant's Br. at 19-20, 29 (citing, *inter alia*, **Commonwealth v. Topa**, 410 A.2d 354, 357 (Pa. Super. 1979); and **Cobb**, 28 A.3d at 935).[3] None of the cases cited by Appellant pertain to a court's inherent power to consider the cumulative effect of several individual transgressions in its determination of whether a mistrial is manifestly necessary. Moreover, while the cases cited are factually distinguishable, each highlights the significance that the trial court's broad discretion plays in interpreting the impact of the alleged transgression at the time a mistrial is considered.

Appellant's argument does not convince us that the trial court's *sua sponte* declaration of a mistrial under the facts of this case was unreasonable or the result of a misapplication of law. The trial court was in the best position to determine whether a mistrial was manifestly necessary: it observed counsel's opening statement and assessed its effect on the jury. Further, the court properly considered a less drastic alternative to a mistrial—curative instructions—but determined that instructions would not remedy the

---

[3] In **Topa**, the trial court denied the defendant's motion for a mistrial after a Commonwealth witness referred to a prior trial, and this Court found no abuse of discretion because the witness did not mention that the defendant "had been convicted at the prior trial." 410 A.2d at 357. In **Cobb**, this Court found that the trial court abused its discretion in declaring a mistrial *sua sponte* after a defense witness changed her story. 28 A.3d at 935.

cumulative prejudice of the three comments and would, moreover, reflect poorly on Appellant's counsel. N.T. Trial, 2/23/22, at 69-70; Trial Ct. Op. at 6. The trial court has broad discretion to determine that a mistrial is necessary, and here, it adequately explained its reasons for declaring the mistrial. The record contains no evidence that would indicate the court's decision was the result of partiality, prejudice, bias, or ill-will. Accordingly, we conclude that Appellant's first claim lacks merit.

**D.**

Appellant next challenges the trial court's denial of his motion to suppress evidence obtained from his cell phone. Appellant's Br. at 32. "Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is whether the factual findings are supported by the record [created at the suppression hearing] and whether the legal conclusions drawn from those facts are correct." *Commonwealth v. Evans*, 153 A.3d 323, 327 (Pa. Super. 2016) (citation omitted). When a defendant files a motion to suppress, "it is the Commonwealth's burden to prove, by a preponderance of the evidence, that the challenged evidence was not obtained in violation of the defendant's rights." *Commonwealth v. Wallace*, 42 A.3d 1040, 1047–1048 (Pa. 2012) (citing Pa.R.Crim.P. 581(H)). "Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error." *Evans*, 153 A.3d 327 (citation omitted).

*

Appellant asserts that the trial court should have granted suppression because the Allegheny County detectives did not have a warrant to seize his phone from Lincoln Borough police. Appellant's Br. at 33-35.[4]

The trial court noted that Appellant does not challenge the original seizure of his phone by Lincoln Borough police officers;[5] rather, Appellant challenged only the transfer of his phone to the Allegheny County detectives. Trial Ct. Op. at 9. The court noted that it found no case law indicating that the county detectives needed a search warrant to take Appellant's phone from the local police officers who had lawfully seized it. *Id.* at 10. Moreover, it noted that, after the county detectives obtained possession of the phone, the detectives sought and obtained a warrant supported by probable cause to search its contents. *Id.* at 11. Accordingly, the court concluded that suppression was not required. *Id.*

We agree with the trial court. Our research also fails to reveal any authority that forbids a local police department from turning over lawfully-

---

[4] Appellant also argues that the warrants for his cell phone were overbroad because they sought "all electronic data, files, and folders[,]" not specific files. Appellant's Br. at 37. However, Appellant failed to raise this claim with specificity in his Rule 1925(b) Statement, and thus the trial court did not address it. Accordingly, it is waived. *See Commonwealth v. Hansley*, 24 A.3d 410, 415 (Pa. Super. 2011) (citation omitted) (noting that we may find waiver if Rule 1925(b) Statement is not "specific enough for the trial court to identify and address the issue [appellant wished] to raise on appeal.").

[5] In its opinion, the trial court refers to the local police department as "Liberty Borough." *See* Trial Ct. Op. at 9.

obtained evidence to county law enforcement officials. In his brief, Appellant cites no binding authority establishing that county detectives needed a warrant to obtain his cell phone from the local police department.[6]

Appellant's argument fails to establish how the trial court erred in denying his motion to suppress, and, thus, his second claim lacks merit.

**E.**

We conclude that the trial court did not abuse its discretion by *sua sponte* declaring a mistrial and that it properly denied Appellant's motion to suppress. Accordingly, we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 5/15/2024

---

[6] The non-binding authority Appellant does cite is inapposite. Appellant's Br. at 35-37 (citing **U.S. v. Hulscher**, 2017 WL 657436, (D.S.D. Feb. 17, 2017)). In **Hulscher**, the issue involved federal agents' warrantless viewing of the contents of the defendant's cell phone, which local police had retrieved pursuant to a warrant obtained for unrelated charges. 2017 WL 657436 at *1-*2. Here, however, the detectives obtained a warrant to search the phone's contents after receiving the phone from the local police department.